**In re Carl D. WARREN, Debtor.**

**Clyde RIDLEY**

v.

**David and Mabel SANDERS.**

**Bankruptcy No. 3–80–01083.
Adv. No. 3–81–0209(D).**

United States Bankruptcy Court,
W.D. Kentucky.

Nov. 30, 1982.

---

Robert H. Jones, Louisville, Ky., for plaintiff.

Terrance A. Jones, Louisville, Ky., for Daniel and Mabel Sanders.

Louis M. Nicoulin, Louisville, Ky., for Carl D. Warren.

### MEMORANDUM AND ORDER

MERRITT S. DIETZ, Jr., Bankruptcy Judge.

The slender volume of this file belies the complexity of the case within. There is not a justiciable controversy in it, but it does broadly hint at sanctions far more substantive than the relief sought in the complaint.

This proceeding involves the debtor, Carl Warren; an accommodating uncle, David Sanders; and one relentless creditor, Clyde Ridley. The best abstract of the facts may be drawn, somewhat surprisingly, from a brief filed by the defendant:

Clyde Ridley, an unpaid supplier to Warren's carpet business, sued Warren in early 1980, promptly obtained a judgment for $16,778.50, and on April 6 of that year filed a judicial lien on Warren's home. Ridley was prevented from fully realizing on the judgment when, ten days after the lien was filed, Warren filed bankruptcy.

At the time of bankruptcy, unknown to Ridley and unreported to the bankruptcy court as required by law, Warren owed over $30,000 to his uncle, David Sanders. Sanders knew of the bankruptcy. He filed no claim with the court.

In bankruptcy court, Ridley again sued Warren, this time to have the unpaid balance of the debt, $9,536.85, declared nondischargeable because it was part of a loan that had been obtained through use of a fraudulent financial statement.

Again Ridley was successful; this court, acting through Judge Stewart E. Bland, entered judgment in his favor on February 3, 1981. And again Ridley filed a lis pendens against Warren's home, this time obtaining execution on it the same day, April 14, 1981.

But once more Ridley was too late. Two weeks earlier, between the date of entry of the bankruptcy court judgment and the

date of the lien filing, Warren had executed a mortgage on his home to the uncle, Sanders.

The mortgage, drawn by Warren's attorney, was given to secure a debt of $35,000, part of which Warren had borrowed from Sanders while he, Warren, was in bankruptcy. The mortgage was signed on February 26, 1981, at which time Warren was within the protection of this court and his estate was being administered. The home was, at that time, property of the estate in the hands of the trustee. The trustee did not renounce his interest in the home until December 16, 1981.

We assume that at the time of the trustee's renunciation he did not know, and perhaps does not know even now, that the property entrusted to his care had been mortgaged to Sanders while the Warren estate was being otherwise routinely administered.

The bothersome irregularities which this case reveals are (1) the existence of a major debt not reported in the bankruptcy petition and (2) a disposition by the bankrupt, in favor of the unreported creditor, of property that rightfully belonged to the trustee. Sequentially understood, those facts, coupled with Warren's twice successful frustration of the judgment creditor's claim, leave Warren, and perhaps others, poised at the slippery edge of the law.

\*    \*    \*

The case at hand is styled *Ridley v. Sanders,* with the judgment creditor suing the mortgagee to have the mortgage declared void. The debtor is not a party to the action.[1] The case has been submitted for resolution on a question of law, with all facts necessary to that determination contained in answers to interrogatories and documents produced in the course of discovery.

The point of law to be examined is the authority of this court to render void a mortgage, facially valid and duly recorded

under state law, in a dispute between two creditors in a closed bankruptcy case. We conclude that we are without such power.

A lesson superabundantly learned from our recent jurisdictional divestiture in *Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.,* —— U.S. ——, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), is that the bankruptcy court, as a non-Article III adjunct to the United States District Court, is without authority to finally adjudicate disputes involving private, state-created claims which are not strictly raised as part of a bankruptcy proceeding.

This is exactly the sort of case envisioned in the concurring opinion of Justices Rehnquist and O'Connor in *Northern Pipeline* as being appropriate for treatment by a state, not a federal adjunctive, court. An action to render void a mortgage and thus to establish lien priorities *as between these parties,* as we read our limitations imposed by *Northern Pipeline,* can only be brought in state court.

Despite the foregoing pejorative, however, we are not altogether eunuchized by *Northern Pipeline,* and do retain the exclusive jurisdiction of all bankruptcy questions placed before us, however imprecisely or indirectly framed. This file, as we suggested at the outset, raises a question of possible circumvention of both the letter and the spirit of the bankruptcy law which we cannot ethically ignore. The case suggests the imposition of certain sanctions, including but by no means limited to (1) an order directing the debtor to release the mortgage on pain of contempt, and/or (2) revocation of the discharge heretofore granted.

Therefore, upon the Court's own motion, it is hereby ORDERED:

1. The bankruptcy petition of Carl Warren and all proceedings related thereto are reopened;

2. Counsel for these parties, counsel for Warren and the trustee shall consult with the court at a time to be set by separate

---

1. The debtor was granted a discharge on September 2, 1981, and the estate was thereafter closed. This is the last remaining of four adversary proceedings generated by the bankruptcy.

order to consider such further proceedings as may appear appropriate.