**In re James K. SEARLES.**

**Civ. A. No. 86–0395P.**

United States District Court,
D. Rhode Island.

Jan. 22, 1987.

---

Z. Hershel Smith, Providence, R.I., for appellant James Searles.

Jonathan F. Oster, Lincoln, R.I., for appellant Joyce Searles.

Brian Spero, Providence, R.I., for appellee William Gray, Jr.

## MEMORANDUM AND ORDER

PETTINE, Senior District Judge.

This case involves an appeal from an order of the Bankruptcy Court pursuant to

28 U.S.C. section 158(a). The appellants, Joyce Searles ("Mrs. Searles") and James K. Searles ("Mr. Searles"), challenge an order of the Bankruptcy Court, entered April 11, 1986, that required them to vacate a residence in Cumberland, Rhode Island known as Grayrock Manor. That order found that the appellee, William Gray, Jr. ("Mr. Gray"), was entitled to immediate and exclusive possession of the property.

The Searleses filed notices of appeal with this Court and remained in possession of Grayrock Manor. After the notices of appeal had been filed, Mr. Gray moved for a temporary restraining order to prevent the Searleses from committing waste to the property. Following a conference in chambers on Friday, October 31, 1986 I issued such an order. On Friday, November 11, 1986 Mr. Gray filed a motion to find the appellants in contempt of court, alleging that waste to the property had not ceased. I issued an order to show cause why the Searleses should not be held in contempt, and a hearing to consider both the bankruptcy appeal and the contempt motion was scheduled for Monday, December 1, 1986.

Following oral argument on December 1, I deferred hearing evidence on the contempt issue until memoranda could be submitted and a decision rendered on the merits of the bankruptcy appeal. Having reviewed the parties' memoranda and considered the relevant law, I now affirm, for reasons stated herein, the April 11, 1986 findings and order of the Bankruptcy Court.

## BACKGROUND

On November 28, 1984 Mr. Searles filed a voluntary petition in bankruptcy pursuant to 11 U.S.C. Chapter 13. Mr. Gray alleges that he had been in the process of foreclosing on a mortgage granted to him by Mr. and Mrs. Searles on the property known as Grayrock Manor, which is located at Pole 46, Angell Road, Cumberland, Rhode Island. Because the bankruptcy filing resulted in an automatic stay of any foreclosure proceedings, 11 U.S.C. section 362(a), Mr. Gray filed a motion for relief from the automatic stay. This motion was disposed of by a Consent Order entered by the Bankruptcy Court on May 14, 1985. The Consent Order was signed by Mr. Gray, Mr. Searles and their respective attorneys, Frank O. Lind, Jr. and Z. Hershel Smith. The Consent Order granted Mr. Gray's motion subject to certain conditions, which included the following: that Mr. Searles commence making twelve monthly payments of $2,708 to Mr. Gray; that Mr. Searles commence paying $200 per month in back taxes due on the property; that, at the end of twelve months, Mr. Searles either purchase Grayrock Manor for $300,-000 in cash or convey a $325,000 mortgage on the property to Mr. Gray; that Mr. and Mrs. Searles execute a quitclaim deed on the property to be held in escrow by Mr. Searle's attorney, Z. Hershel Smith; and that, should Mr. Searles fail to meet any of his obligations under the Consent Order, the escrow deed shall pass to Mr. Gray.

The quitclaim deed was executed by Mr. and Mrs. Searles, but the extent of Mrs. Searles' knowledge of and participation in the drafting of the Consent Order remains in dispute. Subsequent to the execution of the deed, Mr. Searles was incarcerated for tax evasion, and the bankruptcy trustee moved that the bankruptcy proceeding be dismissed. The motion was granted, and the bankruptcy proceeding was dismissed by an order of the Bankruptcy Court on November 18, 1985.

Thereafter, Mr. Searles failed both to pay taxes on the property and to make the required payments to Mr. Gray. Pursuant to the Consent Order, the deed passed to Mr. Gray, and he recorded it. Mrs. Searles remained on the property, however, along with her son and two tenants, Lorraine Vadnais and David Teixeira.

Mr. Gray filed with the Bankruptcy Court a motion to clarify, instruct and/or reform the Consent Order, alleging the above facts and requesting the Court to order the premises at Grayrock Manor vacated. The Bankruptcy Court held hearings on the motion to clarify on April 3 and 8, 1986. On April 3, 1986 Mrs. Searles reminded the Court that the bankruptcy

proceeding had been dismissed, and the Court ruled that the proceeding would be reinstated for purposes of dealing with the motion to clarify, transcript at 11. An Order vacating the November 18, 1985 dismissal was entered on April 4, 1986.

On April 8, 1986 Mrs. Searles maintained that she had signed under duress the deed subsequently placed in escrow and that the Bankruptcy Court lacked jurisdiction to evict her. On April 11, 1986 the Bankruptcy Court issued its decision. The Court found, among other things, that it had jurisdiction to hear and decide the issues raised by Mr. Gray's motion to clarify; that Mrs. Searles failed to establish that she had signed the deed under duress; that the testimony of Mr. and Mrs. Searles was unconvincing; and that Mr. Gray was entitled to immediate and exclusive possession of Grayrock Manor. The Court therefore ordered the following: that the property of Mr. Searles be removed from Grayrock Manor by April 30, 1986; that Lorraine Vadnais and David Teixeira remove themselves and their property by April 30, 1986; and that Mrs. Searles remove herself, her son and all of her belongings by May 31, 1986.

Mr. and Mrs. Searles both filed notices of appeal and moved for stays of the Bankruptcy Court Order pending appeal. The Bankruptcy Court denied Mr. Searles' motion for stay on April 18, 1986 and denied Mrs. Searles' on April 22, 1986. The motions for stay were renewed in this Court, and were denied on April 29 and 30, 1986 and on May 28, 1986. Despite these denials of all motions for stay of the Bankruptcy Court's Order pending appeal, Mrs. Searles has remained in possession of Grayrock Manor.

DISCUSSION

Four issues are raised by Mr. and Mrs. Searles' appeal: first, whether the Bankruptcy Court's dismissal of Mr. Searles' bankruptcy case divested the Bankruptcy Court of authority to enforce the Consent Order in a subsequent proceeding; second, whether the Bankruptcy Court erred by reopening *sua sponte* Mr. Searles' bankruptcy case to enforce the Consent Order; third, whether the Bankruptcy Court had subject-matter jurisdiction to evict Mrs. Searles from Grayrock Manor; and fourth, whether the Bankruptcy Court erred in finding that Mrs. Searles did not sign the deed under duress.

■ Before discussing each of these issues, I must emphasize the separateness of the duress issue from the issues of personal and subject-matter jurisdiction. Since it was first raised at the April, 1986 hearings on Mr. Gray's motion to clarify, the duress issue has been phrased as a jurisdictional issue. This is a misnomer. First, the duress issue is irrelevant to the question of personal jurisdiction. If Mrs. Searles was given proper notice and an opportunity to be heard at the April, 1986 hearings—a fact that she does not contest—then she was properly within the personal jurisdiction of the Bankruptcy Court. Second, the duress issue is not dispositive with respect to subject-matter jurisdiction. The question of subject-matter jurisdiction turns on whether the Bankruptcy Court has the authority to evict persons from property that belongs to a creditor pursuant to the terms of a Consent Order. If the Bankruptcy Court possesses such authority, then the duress issue arises in the context of a subsequent inquiry: whether the facts warrant the exercise of such authority in the particular case at hand. For if Mrs. Searles signed the deed under duress, then the deed is unenforceable against her.

Based on these considerations, I have reviewed the question of subject-matter jurisdiction separate from the question of duress, *infra*.

1. The effect of the Bankruptcy Court's dismissal of Mr. Searles' bankruptcy case

■ Mrs. Searles maintains that the dismissal of Mr. Searles' bankruptcy case on November 18, 1985 divested the Bankruptcy Court of authority subsequently to enforce the Consent Order. She relies on 11

U.S.C. sub-sections 349(b)(2), (3) which provide:

> (b): Unless the court, for cause, orders otherwise, a dismissal of a case other than under section 742 of this title—
>
> .    .    .    .    .
>
> (2) vacates any order, judgment, or transfer ordered, under section 522(i)(1), 542, 550, or 553 of this title; and
>
> (3) revests the property of the estate in the entity in which such property was vested immediately before the commencement of the case under this title.

This case involves a dismissal "other than under section 742 of this title," since section 742 is limited to a dismissal following the liquidation of a debtor by a Security Investor Liquidation Corporation. Consequently, section 349(b) is applicable, and the effects of subsections 349(b)(2) and (3) must be considered.

Subsection 349(b)(2) provides that a bankruptcy dismissal vacates orders entered under one of four sections of the Bankruptcy Code. The Consent Order at issue falls under none of the four enumerated sections: 522(i)(1), debtor's right to exempt property; 542, turnover of property to the estate; 550, liabilities of transferee of avoided transfer; and 553, setoff. Therefore, by negative implication, subsection 349(b)(2) provides that the Consent Order was not vacated by the dismissal of Mr. Searles' bankruptcy case.

Subsection 349(b)(3) provides that a bankruptcy dismissal revests the property of the bankruptcy estate in the entity in which it was vested immediately before commencement of the case. The question arises as to whether this applies only to property remaining in the bankruptcy estate at the time of dismissal, or whether it also applies to property that has been distributed to creditors prior to dismissal. The few cases that mention subsection 349(b)(3) refer to its applicability only in the context of property or property rights that have not passed out of the bankruptcy estate. *See, In re Nash,* 765 F.2d 1410, 1414 (9th Cir.1985) (Wage deductions received by Trustee before dismissal revest in debtor/wage-earner after dismissal.); *In re Groves,* 27 B.R. 866 (Bankr.D.Kan.1983) (Security interest in undischarged debts revests in creditor after dismissal.); *In re Beasley,* 22 B.R. 773, n. 1 (Bankr.W.D. Tenn.1982) (Debtor's mortgaged residence revests in debtor subject to mortgage after dismissal.). These cases suggest that the "property of the estate" that revests in its prior owners after dismissal includes only the property left in the estate at the time of dismissal. This view is reinforced by the legislative history of subsection 349(b). In a brief discussion of 349(b)'s impact on property that has passed out of the estate prior to dismissal, the legislative history states, "[w]here there is a question over the scope of the subsection, the court will make the appropriate order to protect rights acquired in reliance on the bankruptcy case." S.Rep. No. 989, 95th Cong., 2d Sess. 49, *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 5835.

█ These considerations lead me to conclude that neither subsection 349(b)(2) nor 349(b)(3) deprives a Consent Order of its binding effect following dismissal of the bankruptcy case. The question remains whether the dismissal deprives the Bankruptcy Court of authority subsequently to reopen the case and enforce the Order. This question is answered by subsection 350(b), which confers on the Bankruptcy Court the authority to reopen a closed case, in order "to administer assets, to accord relief to the debtor, or for other cause." Enforcing a Consent Order disposing of assets of the estate does not appear to lie outside the scope of matters that have been recognized as legitimate cause for reopening a bankruptcy case. *See, e.g., Bartle v. Markson,* 357 F.2d 517, 523 (2d Cir.1966) (enforcement of creditors' claims); *Corn Exchange Bank Trust Co. v. Empire Trust Co.,* 206 F.2d 30, 33 (2d Cir.1953) (incomplete administration of estate prior to closing case). Under 11 U.S.C. subsection 11(a)(8), the statutory predecessor to subsection 350(b), the bankruptcy courts' decisions to reopen cases for cause were

reviewable only for abuse of discretion. *See, In re Thomas,* 204 F.2d 788, 791 (7th Cir.1953); *In re Butts,* 123 F.2d 250, 251 (2d Cir.1941). I have found nothing in either the legislative history or judicial construction of subsection 350(b) to indicate that this standard of review has been changed, and I do not find that reopening a bankruptcy case to enforce a previously-entered Consent Order constitutes abuse of discretion.

2. Whether the Bankruptcy Court erred by reopening *sua sponte* Mr. Searles' bankruptcy case.

Mrs. Searles asserts that the Bankruptcy Judge lacked the authority to reopen her husband's bankruptcy case without a motion to reopen having been filed by an interested party. My review of the applicable law suggests that this assertion is wrong, both because bankruptcy courts do have the power to reopen cases *sua sponte,* and because Mr. Gray's filing of a motion to clarify may be treated as a sufficient substitute for a motion to reopen.

i. Power to reopen *sua sponte*

■ The phrasing of 11 U.S.C. subsection 350(b) does not appear to prohibit a bankruptcy court from reopening a case *sua sponte:* "[a] case may be reopened in the court in which such case was closed to administer assets, to accord relief to the debtor, or for other cause." Bankruptcy Rule 5010 provides, "[a] case may be reopened on motion of the debtor or other party in interest pursuant to § 350(b) of the Code." Whether a bankruptcy court can reopen a case *sua sponte* thus turns on whether Rule 5010 operates as a limit upon the broader language of 11 U.S.C. subsection 350(b).

The legislative history of the Bankruptcy Code lends support to the view that Rule 5010 limits the effect of subsection 350(b). This history specifies that matters to be dealt with by the Rules include the "[m]echanics of reopening a case," H.R. Rep. No. 595, 95th Cong., 2d Sess., 293–94, *reprinted in* 1978 U.S.Code Cong. & Ad-

min.News 6250–51, and elsewhere provides that "[t]he Rules will prescribe the procedure by which a case is reopened ...," S.Rep. No. 989, 95th Cong., 2d Sess. 49, *reprinted in* 1978 U.S.Code Cong. & Admin.News 5835.

However, the Bankruptcy Rules Enabling Act, 28 U.S.C. section 2075, provides that the Bankruptcy Rules "shall not abridge, enlarge or modify any substantive right," and this statute has been interpreted as expressing "the intention of Congress, in enacting the Bankruptcy Code, that the rule-making power be limited and exercised consistently with the substantive provisions of the Code." *In re Itel Corp.,* 17 B.R. 942 (9th Cir. BAP 1982). This latter view, that the Bankruptcy Rules cannot limit the operation of the bankruptcy statutes, is endorsed in the legislative history of the 1978 amendments to 28 U.S.C. section 2075:

This bill extensively revises the bankruptcy law. Nearly all procedural matters have been removed and left to the Rules of Bankruptcy Procedure. Consequently, the need to permit the Supreme Court's rules to supercede the statute no longer exists. *To the extent that a rule is inconsistent, the statute will govern.*

S.Rep. No. 989, 95th Cong., 2d Sess. 158, *reprinted in* 1978 U.S.Code Cong. & Admin.News 5944 (emphasis added).

It follows from the above considerations that Bankruptcy Rule 5010 does not prohibit a Bankruptcy Court from reopening a case *sua sponte* pursuant to 11 U.S.C. subsection 350(b). This reading of the bankruptcy courts' authority is reinforced by judicial interpretations of the regime that preceded subsection 350(b) and Rule 5010. As indicated in the quoted legislative history of 28 U.S.C. section 2075, *supra,* the pre–1978 Bankruptcy Rules took priority over conflicting statutory provisions. Yet even under former Bankruptcy Rule 515, the predecessor of Rule 5010 that permitted a case to be reopened on application of an interested party, the Bankruptcy Courts were regarded as having the power to reopen cases *sua sponte. See, In re Mullen-*

*dore,* 741 F.2d 306, 308 (10th Cir.1984) ("[C]ontrary to appellants' contention that the bankruptcy judge had no authority to reopen the estate and enter the order assessing the fee, 'it has been suggested that perhaps the court could make a reopening order *sua sponte*'" (citation omitted)); *In re Warren,* 24 B.R. 846 (Bankr.W.D.Ky. 1982) (reopening a closed bankruptcy case *sua sponte*); *see also In re Thomas,* 204 F.2d 788, 791 (7th Cir.1953); *Schofield v. Moriyama,* 24 F.2d 473, 475 (9th Cir.1928).

ii. The motion to clarify as a sufficient substitute for a motion to reopen

■ In *Matter of Seats,* 537 F.2d 1176 (4th Cir.1976), a Bankruptcy Judge's refusal to reopen a case and modify a discharge order was reversed by the Fourth Circuit Court of Appeals. The appellants had filed with the Bankruptcy Court a post-discharge motion that was both untimely and unaccompanied by a motion to reopen. Emphasizing the inherent equitable powers of bankruptcy courts, the Fourth Circuit made clear that a motion to modify an order in a closed bankruptcy case may be treated as a motion to reopen:

> [A] bankruptcy court is a court of equity and possesses inherently and by statute the power to *modify* an order of discharge....
>
> .   .   .   .   .
>
> Though inartfully styled, we will regard Hotel Supply's petition as one to reopen the estate pursuant to ... Rule 515 in order that the discharge order might be modified.

537 F.2d at 1177 (emphasis in original).

The instant case presents a very similar situation, except that Mr. Gray's motion to clarify asked the Bankruptcy Court to enforce rather than modify the Consent Order. I can find no significance in this distinction that would affect the Bankruptcy Court's authority to treat Mr. Gray's motion as a sufficient substitute for a motion to reopen.

3. Whether the Bankruptcy Court had subject-matter jurisdiction to evict Mrs. Searles from Grayrock Manor

■ The question of subject-matter jurisdiction focuses on whether the Bankruptcy Court possessed the authority to evict persons from property that belongs to a creditor pursuant to the terms of a Consent Order entered by that Court. The traditional equitable powers of the bankruptcy courts, *see, Bank of Marin v. England,* 385 U.S. 99, 103, 87 S.Ct. 274, 277, 17 L.Ed.2d 197 (1966), are currently codified in the 1984 amended version of 11 U.S.C. section 105, which reads as follows: "(a) The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title ... (c) ... This subsection shall not be interpreted to exclude bankruptcy judges ... from its operation."[1] By evicting persons

---

**1.** The second quoted sentence was added as part of the 1984 Bankruptcy Code amendments, which were enacted after the Supreme Court curtailed the subject-matter jurisdiction of the bankruptcy courts in *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). Before 1984, subsection 105(a) referred to the powers of the "bankruptcy court," but after *Northern Pipeline* Congress deleted the word "bankruptcy," leaving only the word "court."

This change is not discussed in any legislative history, but it was probably intended to keep section 105 consistent with the 1984 amended version of the bankruptcy courts' jurisdictional statutes under Title 28. As discussed more fully, *infra,* the 1984 bankruptcy amendments added section 157 to Title 28 of the U.S.Code. Section 157 limited the subject-matter jurisdiction of the bankruptcy courts to conform with the Supreme Court's *Northern Pipeline* decision. Many issues over which the bankruptcy courts had exercised plenary jurisdiction were redesignated as "non-core proceedings," over which bankruptcy judges were henceforth permitted only to submit proposed findings of fact and conclusions of law to the district court, subsection 157(c)(1).

The change in 11 U.S.C. subsection 105(a)'s wording, from "bankruptcy court" to "court," reflects the doctrine that the district courts possess original and exclusive jurisdiction over many issues that formerly were adjudicated by the bankruptcy courts. But the proviso in 105(c), that "[t]his subsection shall not be interpreted to exclude bankruptcy judges ... from its operation," recognizes the need for bankruptcy courts to retain their equitable powers with

from property that passed to a creditor pursuant to a Consent Order, the Bankruptcy Court simply gave effect to its own prior exercise of authority. The eviction order thus falls within the Bankruptcy Court's equitable power under section 105, "to issue any order ... that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]."

■■■ Nevertheless, the question remains whether this interpretation of the recently-amended section 105 comports with the doctrine of *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). Because bankruptcy courts are not Article III courts, their subject-matter jurisdiction must be limited to the adjudication of congressionally-created rights under the Bankruptcy Code, and cannot include the adjudication of either state-created rights or federal Constitutional rights. 458 U.S. at 81–84, 102 S.Ct. at 2877–78. Applying this doctrine to the facts presented here, I cannot regard the Bankruptcy Court's eviction order as an impermissable adjudication of state-created rights. It is true that the enforcement of Mr. Gray's deed must be supported by the relevant principles of state law. But in the instant case, the Bankruptcy Court's enforcement of the deed required no interpretation of state property law. Rather, the rights in the deed at issue were created by the terms of a Consent Order that was entered pursuant to a federal bankruptcy proceeding.

This finding is consistent with amendments to the bankruptcy courts' jurisdictional statutes that were passed by Congress in response to the *Northern Pipeline* decision. Under 28 U.S.C. section 1334, district courts have original jurisdiction over all cases and proceedings arising under the Bankruptcy Code. But 28 U.S.C. subsection 157(a) provides, "[e]ach district court may provide that any or all cases under title 11 shall be referred to the bankruptcy judges for the district." By an Order dated July 18, 1984, this Court referred all such cases and proceedings to the Bankruptcy Judges for the district. Section 157 goes on to distinguish "core proceedings" under title 11 from noncore proceedings "otherwise related to a case under title 11," permitting bankruptcy judges to issue final orders with respect to the former, 157(b), but only to submit proposed findings of fact and conclusions of law with respect to the latter, 157(c). Subsection 157(b)(2) defines core proceedings to include such matters as "the administration of the estate ... allowance or disallowance of claims against the estate ... orders to turn over property of the estate ... [and] other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury tort or wrongful death claims."

The Consent Order entered in the course of Mr. Searles' bankruptcy case falls within the above definition of a core proceeding. Consequently, both the Consent Order and the subsequent eviction Order fall within the Bankruptcy Court's statutory subject-matter jurisdiction under 28 U.S.C. subsection 157(b)(1), which provides, "[b]ankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, ... *and may enter appropriate orders and judgments*, subject to review under section 158 of this title." (emphasis added). *See, In re Las Margaritas, Inc.* 54 B.R. 98 (Bankr.D.Nev.1985) (eviction order issued by Bankruptcy Court in bankruptcy case filed after effective date of amendments to bankruptcy jurisdiction statutes).

### 4. Whether Mrs. Searles signed the deed under duress

■■■ The Bankruptcy Court's determination that Mrs. Searles did not sign the deed under duress is a factual finding governed by Bankruptcy Rule 8013, which provides, "[f]indings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of

respect to issues over which they continue to have subject-matter jurisdiction.

the bankruptcy court to judge the credibility of the witnesses."

Mrs. Searles testified that she signed the deed because her husband was emotionally unstable and she feared he would harm himself if she declined his repeated requests that she sign the deed. Transcript of hearing before Bankruptcy Judge Votolato, April 8, 1986 ("Transcript") at 87–88; *see also, id.* at 13–14. However, Z. Hershel Smith, Esq., who represented Mr. Searles through the execution of the Consent Order, testified that he witnessed Mr. and Mrs. Searles sign the deed and that he believed Mrs. Searles signed the deed free from duress. Transcript at 44. Testimony by both Mrs. Searles and Attorney Smith shows that Mrs. Searles was consulted over the telephone about the terms of the Consent Order, which required a deed for Grayrock Manor to be placed in escrow. Transcript at 5, 6, 42, 48. Attorney Smith also testified that a paragraph was added to the Consent Order upon Mrs. Searles' request, giving her mother priority in any excess proceeds from the sale of Grayrock Manor, if it were ever subsequently foreclosed upon and sold. Transcript at 42, 48.

This testimony provides sufficient evidence to support the Bankruptcy Court's conclusion that Mrs. Searles signed the deed voluntarily. It also permits the conclusion that Mrs. Searles understood the essentials of the Consent Order, which provided the context for comprehending the significance of signing the deed. Considering also the Bankruptcy Court's conclusion that the testimony of Mr. and Mrs. Searles was unconvincing, Order of April 11, 1986 at 2, I have no basis for reversing, under a "clearly erroneous" standard, the Bankruptcy Court's finding that Mrs. Searles did not sign the deed under duress. Mrs. Searles' proferred defense against the eviction Order thus fails.

CONCLUSION AND ORDER

I have found, as a matter of law, the following: that the dismissal of Mr. Searles' bankruptcy case did not divest the Bankruptcy Court of jurisdiction to enforce the Consent Order in a subsequent proceeding; that the Bankruptcy Court did not err by reopening *sua sponte* Mr. Searles' bankruptcy case, both because such a *sua sponte* reopening is not prohibited by law and because Mr. Gray's motion to clarify provided a sufficient substitute for a motion to reopen; and that the Bankruptcy Court possessed subject-matter jurisdiction to evict persons from property that has passed to a creditor pursuant to the terms of a Consent Order. I have also found that the Bankruptcy Court did not commit clear error in its factual finding that Mrs. Searles did not sign the deed to Grayrock Manor under duress.

I therefore affirm the Findings, Conclusions and Order of the Bankruptcy Court issued on April 11, 1986. Mr. and Mrs. Searles are hereby ordered to remove themselves, their son, their tenants and all of these individuals' personal belongings from Grayrock Manor by such date as will be determined by this Court.

Finally, Mr. and Mrs. Searles are hereby notified that my Order of October 31, 1986 prohibiting waste to the property of Grayrock Manor, with respect to which a contempt motion remains outstanding, is still in effect. A hearing to rule on Mr. Gray's contempt motion and to establish an eviction date is hereby set down for the 12th day of February, 1987 at 9:30 a.m.

So ordered.