NOT FOR PUBLICATION

## UNITED STATES BANKRUPTCY APPELLATE PANEL

## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: | BAP No.   CC-11-1322-KiMkH |
| JEFFREY A. CLARK and JODENE M. CLARK, | Bk. No.   00-11061-VK |
| Debtors. | |
| MARTIN STRAND; GABRIELLE STRAND, | |
| Appellants, | |
| v. | **M E M O R A N D U M**[1] |
| JEFFREY A. CLARK; JODENE M. CLARK, | |
| Appellees. | |

Submitted Without Oral Argument
on February 24, 2012[2]

Filed - May 25, 2012

Appeal from the United States Bankruptcy Court
for the Central District of California

Honorable Victoria S. Kaufman, Bankruptcy Judge, Presiding

Appearances:     Christopher C. Gautschi, Esq. on brief for
                 Appellants Martin Strand and Gabrielle Strand;
                 Frank J. Lozoya of Law Offices of Lozoya & Lozoya
                 on brief for Appellees Jeffery A. Clark and Jodene
                 M. Clark.

---

[1] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8013-1.

[2] In an order dated February 16, 2012, the Panel determined that based on the parties' stipulation to submit on the briefs this matter was suitable for disposition without oral argument. Fed. R. Bankr. P. 8012; 9th Cir. BAP R. 8012-1.

Before: KIRSCHER, MARKELL, and HOLLOWELL, Bankruptcy Judges.

Appellants, Martin and Gabrielle Strand ("Strands"), appeal an order from the bankruptcy court denying their motion to reopen the chapter 7[3] bankruptcy case of appellees, Jeffrey and Jodene Clark ("Clarks"). We conclude the bankruptcy court applied an incorrect standard of law by going beyond the scope of the motion to reopen and reviewing the merits of the underlying claims Strands wish to bring. Therefore, we must REVERSE and REMAND with instruction to reopen the case.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Events leading up to the Motion to Reopen.

This case has a long, litigious history, but little of it was included in the record.[4] In 1990, Strands owned a rental house in Simi Valley, California, which they had been renting to the Clarks for several years (the "Property").

On November 6, 1990, the parties executed a written agreement for the Property entitled "Equity-Share Partnership Agreement with

---

[3] Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and to the Federal Rules of Bankruptcy Procedure, Rules 1001-9036, as enacted and promulgated prior to the effective date of The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. 109-8, 119 Stat. 23.

[4] Because important portions of the record were missing, we reviewed the Ventura County Court docket ("VCC"), case no. SC044691, to determine the facts and procedural history of this case. The Panel can take judicial notice of relevant proceedings in other courts. See Kowalski v. Gagne, 914 F.2d 299, 305 (1st Cir. 1990)("It is well-accepted that federal courts may take judicial notice of proceedings in other courts if those proceedings have relevance to the matters at hand.").

Right-to-Purchase Option" ("Partnership Agreement"). In the Partnership Agreement, Clarks agreed to purchase the Property from Strands for $192,200. Specifically, Clarks were to make a $1,200 down payment, and the balance of the purchase price was to be financed by a $131,250 conventional loan secured by a first deed of trust and by a $59,750 loan from Strands secured by a second deed of trust. The parties further agreed to share, on a 60/40 basis, the appreciation in the Property above $192,200, if any, "from the date of this agreement until the agreement is concluded and satisfied." The Partnership Agreement would be "concluded and satisfied" when the parties received their respective "percentage share amount(s) . . ., and the pay-off of the remaining balance of the second deed of trust to [the Strands]." Strands' 40% share in the Property's appreciation was to be inclusive of any interest payment portions and exclusive of any principal payment portions paid toward the $59,750 second deed of trust. The Partnership Agreement gave Strands the option to purchase the Property under certain conditions. No copy of a promissory note or a second deed of trust is in the record. It is uncertain whether these documents were ever created and/or recorded.[5]

Several days prior to the execution of the Partnership Agreement, Strands executed a grant deed conveying the Property without reservation to Clarks as joint tenants on October 24, 1990. The grant deed, recorded on November 2, 1990, in Ventura County, does not refer to any partnership or partnership interest.

---

[5] In an appeal to the BAP regarding the granting of a stay relief motion filed by Strands (discussed infra), Clarks alleged that a second deed of trust was drafted but never recorded.

-3-

The escrow instructions, dated October 24, 1990, are also silent as to any partnership and state that the grant deed was being recorded to establish the Property in the name of "Clarks only."

On September 30, 1998, Strands executed a Notice of Lien in Ventura County claiming a contractual ownership interest in the Property. For reasons unknown, the Notice was not recorded until March 30, 1999.

Clarks filed a chapter 7 bankruptcy case on February 1, 2000. In their Schedule A, Clarks listed the Property with a market value of $183,000 and a secured claim against it for $172,495, but they failed to list the nature of their interest in it. Schedule F reflects an unsecured "personal loan" of $59,750 owed to Mr. Strand, whose address was "unknown." Mrs. Strand was not named anywhere in Clarks' schedules. Clarks have alleged that they were unable to contact Strands because Strands had moved out of state. Clarks did not schedule an interest in any partnership in their Schedule B. They also did not disclose their cross-claims against Strands in their Schedule B or their Statement of Financial Affairs. The chapter 7 trustee administered Clarks' case as a "no asset" case, and Clarks received their discharge in May 2000. Their bankruptcy case was closed that same month.

In November 2005 and unaware of the bankruptcy, Strands sued Clarks in state court alleging claims premised on the partnership's ownership of the Property ("Partnership Case"). Specifically, Strands alleged that the Property was the sole asset of the partnership. They sought dissolution of the partnership, an accounting, and the appointment of a receiver to wind up the partnership's affairs and to sell the Property. Strands further

-4-

sought declaratory relief to ascertain their interest in the Property and to receive their 40% share of the Property's equity.

In their answer, Clarks contended that Strands' suit was barred in light of the discharge in 2000. Clarks further contended that the alleged partnership dissolved by its own terms in 2000. Clarks filed a cross-complaint, alleging claims for slander of title and abuse of process.

In September 2006, Strands filed a motion to reopen Clarks' bankruptcy case which was granted on November 30, 2006.[6] In August 2007, Strands moved for relief from stay to continue prosecuting the Partnership Case in state court.[7] In October 2007, the bankruptcy court entered an order granting the motion, which states:

> The parties may return to the state court and litigate all issues regarding the existence if any and the effect if any of the alleged partnership, including a determination of what the partnership assets are if any, dissolution of the partnership and disposition of the partnership assets and the rights and obligations of the partners.
>
> There shall be no personal liability of the debtors. The rights of contribution, reimbursement, and satisfaction of claims against the partnership property may be determined, including if necessary the determination of the existence and if necessary the status of any liens against the partnership assets, if any.

---

[6] None of the moving papers were provided in the record, and they are not available on the bankruptcy court's electronic docket.

[7] We were also not provided a copy of these moving papers, and they are not available on the bankruptcy court's electronic docket. However, in reviewing the Panel's Memorandum regarding Clarks' appeal of this matter (CC-07-1393), Strands had argued that Clarks' interest in the alleged partnership remained property of the estate because it had not been scheduled.

-5-

Clarks appealed the stay relief order to the BAP (CC-07-1393). The Panel affirmed, reasoning that if the partnership did exist, Clarks' interest in it was still property of the estate because it was not disclosed. As such, it did not revert to Clarks upon discharge. Mem. (Apr. 4, 2008) at 8. Nothing suggests that Clarks at that time disputed Strands' status as a creditor in their bankruptcy case.

The parties returned to state court to litigate the Partnership Case in 2008. Strands later moved for summary judgment on Clarks' cross-complaint and for summary adjudication of their first cause of action (dissolution, accounting, and sale of partnership property); the request was denied on March 5, 2009. In the state court's opinion, triable issues of material fact remained as to whether a partnership existed regarding the Property, who owned the Property (Clarks or the partnership), the significance of listing the Strands' debt as unsecured in Schedule F, and whether an interest in the alleged partnership, if it existed, remained an asset of the bankruptcy estate. The matter was set for a 5-day jury trial.

Trial took place on the Partnership Case in or about July 2009. VCC dkt. nos. 77-82. The state court granted Clarks' motion in limine to exclude the Partnership Agreement and their oral motion for nonsuit. Strands appealed to the California Court of Appeals, Second District. See case no. B218861.[8] The appellate court held that the state court erred in determining the

---

[8] We found a copy of the appellate court's Memorandum Decision dated June 22, 2010, at: http://www.leagle.com/xml Result.aspx?xmldoc=in%20caco%2020100622034.xml&docbase=cslwar3-200 7-curr.

-6-

Partnership Agreement should be excluded from evidence based on the parol evidence rule and reversed. The appellate court reasoned that the parol evidence rule did not apply in this case because the grant deed was not integrated and did not serve as the exclusive embodiment of the parties' agreement.[9] The reversal of the decision on Clarks' motion in limine led the appellate court also to reverse the state court's decision granting their motion for nonsuit. The Partnership Case was remanded for a new trial.

The parties continued litigating the Partnership Case in state court. A trial was set for January 10, 2011. For reasons not evident in the record, on December 27, 2010, just days before trial, Strands voluntarily dismissed the Partnership Case without prejudice. On January 10, 2011, the parties appeared and informed the state court that the complaint had been dismissed. Counsel for Clarks, however, advised the court that their cross-complaint remained. Trial was continued to January 18, 2011. On January 18, counsel for Strands advised the state court that he was filing a motion to vacate the trial, which Clarks opposed. The trial was repeatedly continued until May 24, 2011. See VCC dkt. nos. 154, 163, 169, 176. Just prior to the May 24 trial date, Clarks dismissed, without prejudice, their cross-complaint.

_____

[9] In the Memorandum, the California Court of Appeals also stated:

> The partnership agreement was meant to be part of the bargain by which the residence was deeded to the Clarks. The partnership agreement does not directly contradict the express terms of the grant deed. Pursuant to the partnership agreement, the Clarks agreed to purchase the residence from the Strands. The grant deed effectuated that purchase. The partnership agreement does not state that title to the residence shall be held in the name of the partnership.

-7-

Id. at dkt. no. 177.[10]

**B.  The Motion to Reopen.**

Claiming ignorance of the second closing of Clarks' bankruptcy case in September 2008, Strands on April 16, 2011 moved to again reopen the case under § 350(b).  Strands wished to do the following upon reopening: (1) appoint a chapter 7 trustee to administer estate assets that Strands alleged were concealed by Clarks; (2) enjoin Clarks from personally prosecuting undisclosed causes of action that belonged to the estate; (3) file an adversary proceeding to determine the validity, extent, or priority of a lien or other interest in property; (4) pursuant to § 523(a)(3)(B), file a nondischargeability action under § 523(a)(2)(A), (4), or (6); and (5) obtain declaratory relief relating to the foregoing.

Strands contended that Clarks had failed to disclose their ownership interest in the partnership or that Strands held an interest in the Property.  Strands further contended that Clarks failed to disclose the existence of Strands' lien on the Property, the Partnership Agreement, the promissory note, the second deed of trust, or the recording of these lien rights in March 1999.  Finally, Strands contended that Clarks were unlawfully prosecuting cross-claims that belonged to the estate and the chapter 7 trustee due to Clarks' failure to disclose them.

Clarks opposed the motion, contending that Strands lacked

---

[10] While the state court litigation was pending, the bankruptcy court closed Clarks' case for the second time on September 11, 2008.  Under Local Rule 5010-1(g), if no motion or adversary proceeding is pending 30 days after the case is reopened and if no trustee has been ordered appointed, the case may be closed without further notice.

-8-

standing to bring it as they were not creditors or a party in interest due to their dismissal of the Partnership Case. Alternatively, even if Strands had standing, Clarks argued that the motion should be denied because: (1) Strands had already obtained relief to litigate the same claims in state court, which they lost when they dismissed them; (2) Strands' alleged claims were the same partnership claims they litigated in state court and were therefore barred due to the dismissal; (3) the statute of limitations had run long ago on Strands' alleged partnership claims that arose in 1990; (4) the grant deed and escrow instructions showed no partnership interest or intent to grant a partnership interest in the Property; and (5) laches and unclean hands prevented Strands from reopening the case.[11]

A hearing on the motion was held on May 17, 2011. The bankruptcy court was initially inclined to deny the motion because: (1) Strands lacked standing due to the dismissal of their complaint; and (2) because they failed to raise any deficiency issues in Clarks' schedules when they reopened the case the first time in 2006. Hr'g Tr. (May 17, 2011) at 1:10-2:5. In a colloquy with Strands' counsel, the bankruptcy court noted that Strands knew about, but did not raise, any potential standing issues of Clarks in their cross-claims when Strands moved to reopen the bankruptcy case in 2006. Id. at 5:5-14. Counsel for Clarks contended that the cross-claims for slander of title and abuse of

---

[11] At the time the motion to reopen had been filed and heard, the trial on Clarks' cross-claims in the Partnership Case was pending in state court. However, Clarks dismissed their cross-claims, without prejudice, on May 23, 2011, about a week after the hearing on the motion to reopen.

-9-

process arose in 2003, and therefore were postpetition claims belonging to Clarks. Id. at 12:16-20. After hearing argument from the parties, the bankruptcy court denied the motion to reopen:

> The Court's going to deny the motion to reopen on the basis that the movants don't have standing and that they delayed inappropriately in trying to get this relief since they knew about any alleged claims that the debtors had when they sought relief from the automatic stay and obtained relief from the automatic stay to litigate issues in -- the state court, and that it appears that they're now trying to preclude the debtors from pursuing their cross claims by getting a trustee involved in an untimely way when they could have done it years ago.

Id. at 15:25-16:10.

On June 9, 2011, the bankruptcy court entered an order denying the motion to reopen, which states that it was denied "for the reasons stated in Debtors' Opposition papers and for the reasons expressed on the record." Strands timely appealed.

## II. JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 157(b)(2)(A) and 1334. We have jurisdiction under 28 U.S.C. § 158.

## III. ISSUE

Did the bankruptcy court abuse its discretion in denying the motion to reopen?

## IV. STANDARD OF REVIEW

Denial of a motion to reopen a bankruptcy case is reviewed for an abuse of discretion. Lopez v. Specialty Rest. Corp. (In re Lopez), 283 B.R. 22, 26 (9th Cir. BAP 2002). To determine whether the bankruptcy court abused its discretion, we conduct a two-step inquiry: (1) we review de novo whether the bankruptcy court

-10-

"identified the correct legal rule to apply to the relief requested" and (2) if it did, we review under the clearly erroneous standard whether the bankruptcy court's application of the legal standard was illogical, implausible or "without support in inferences that may be drawn from the facts in the record." United States v. Hinkson, 585 F.3d 1247, 1261-62 (9th Cir. 2009)(en banc).

**V. DISCUSSION**

**A.   Section 350(b) and Rule 5010.**

A motion to reopen a bankruptcy case is governed by § 350(b) and Rule 5010.  "A case may be reopened in the court in which such case was closed to administer assets, to accord relief to the debtor, or for other cause."  § 350(b).  Motions to reopen can be made by the debtor or any party in interest.  Rule 5010.  The decision whether to permit a case to be reopened is discretionary with the court.  In re Lopez, 283 B.R. at 27.

**B.   The bankruptcy court applied an erroneous standard of law when it denied the motion to reopen.**

   **1.   Strands had standing.**

One of the reasons the bankruptcy court denied the motion to reopen was because Strands lacked standing.  Unfortunately, the court did not fully articulate how or why it reached this conclusion, other than its statement at the beginning of the hearing that Strands lacked standing because they dismissed their Partnership Case.  Hr'g Tr. at 1:10-23.  We disagree.  Any potential partnership claims exist whether or not Strands have a complaint pending in state court.

If the bankruptcy court was applying the doctrines of issue

-11-

or claim preclusion to find that Strands lacked standing - i.e., that Strands' claims were precluded from being heard due to the dismissal of their Partnership Case in state court - this was erroneous. Under California law, a voluntary dismissal without prejudice is not a final judgment on the merits. Syufy Enters. v. City of Oakland, 128 Cal. Rptr. 2d 808, 816 (Cal. Ct. App. 2002) (citing Associated Convalescent Enters. v. Carl Marks & Co., Inc., 108 Cal. Rptr. 782 (Cal. Ct. App. 1973)). Under CCP § 581(b)(1), an action may be dismissed with or without prejudice upon written request of the plaintiff to the clerk at any time before the actual commencement of trial. CCP § 581(c) further provides that a plaintiff may dismiss his or her complaint, or any cause of action asserted in it, in its entirety, or as to any defendant or defendants, with or without prejudice prior to the actual commencement of trial.

Here, the Partnership Case was dismissed prior to the actual commencement of trial, at least the new trial ordered by the California Court of Appeals, and Strands obtained a voluntary dismissal without prejudice. Therefore, Strands' voluntary dismissal without prejudice fails to satisfy one of the requirements of both preclusion doctrines - a final judgment on the merits. As a result, neither doctrine prevented Strands from bringing their claims in the bankruptcy court or the state court.

However, this error aside, if Strands are not a "party in interest" under Rule 5010 they lacked standing to bring the motion to reopen. We could not locate, and the parties have not cited, any controlling authority regarding "who" qualifies as a "party in interest" under the Rule. The Tenth Circuit has held that,

notwithstanding the expansive definition of "party in interest" in § 1109(b),[12] for purposes of reopening a bankruptcy case the concept of standing is "implicitly confined to debtors, creditors, or trustees, each with a particular and direct stake in reopening cognizable under the Bankruptcy Code." Nintendo Co. v. Patten (In re Alpex Computer Corp.), 71 F.3d 353, 356-57 (10th Cir. 1995) (but also recognizing that certain circumstances may qualify a "debtor of a debtor" as a party in interest with standing to reopen).

Clarks argued in their opposition that Strands were no longer a creditor and therefore lacked standing. As a chapter 7 no-asset case with no bar date, if the prepetition debt to Strands constituted an unsecured debt (not excepted under § 523) it was discharged in 2000, even if Clarks failed to schedule it. Beezley v. Cal. Land Title Co. (In re Beezley), 994 F.2d 1433, 1435 (9th Cir. 1993); § 727. The record reflects that the second deed of trust necessary to secure Strands' loan to Clarks, if one ever existed, was never recorded; hence, the need to file the Notice of Lien. As a result, the $59,750 loan was never secured and any personal liability Clarks had to Strands was discharged. Thus, it would seem that Strands are not creditors.

On the other hand, Strands did file, prepetition, the Notice of Lien against the Property based upon a contractual ownership

---

[12] Section 1109(b) provides:

A party in interest, including the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee, may raise and may appear and be heard on any issue in a case under this chapter.

-13-

interest, i.e., the Partnership Agreement, for which Clarks have pursued a slander of title/abuse of process action. Strands could pursue the property interest claim pursuant to the Notice of Lien in a nonbankruptcy forum, but face Clarks' cross-claims that appear to be property of the estate given nondisclosure and the lack of abandonment by the trustee of any estate interest in those claims. Consequently, Strands were attempting to determine through the reopening of this case if the alleged cross-claims by Clarks remained property of the estate requiring trustee involvement.

Thus, at minimum, the cross-claims gave Strands a pecuniary interest in the case, which we conclude conferred standing. Under Ninth Circuit authority, "the court has the duty to reopen an estate whenever prima facie proof is made that it has not been fully administered." In re Lopez, 283 B.R. at 27 (citing Kozman v. Herzig (In re Herzig), 96 B.R. 264, 266 (9th Cir. BAP 1989)). Further, a court can reopen a case sua sponte. Mullendore v. United States (In re Mullendore), 741 F.2d 306 (10th Cir. 1984) (construing former Rule 515); In re Searles, 70 B.R. 266 (D. R.I. 1987); In re Tall, 79 B.R. 291 (Bankr. S.D. Ohio 1987); In re Warren, 24 B.R. 846 (Bankr. W.D. Ky. 1982). Therefore, even if Strands lacked standing, the bankruptcy court could have reopened the case sua sponte based on the prima facie proof that estate assets have not been administered.

**2. Any partnership interest held by Clarks and their cross-claims were, and remain, property of the estate.**

Section 541(a) provides that the commencement of a bankruptcy case "creates an estate." With certain exceptions not relevant

-14-

here, § 541(a)(1) provides that property of the estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case." A debtor has a mandatory, affirmative duty to disclose all assets to the bankruptcy court. § 521(1).

Any legal or equitable interests Clarks held in the partnership and their cross-claims against Strands became property of the bankruptcy estate as of the petition date. Cusano v. Klein, 264 F.3d 936, 945 (9th Cir. 2001)(assets of the estate include any of the debtor's causes of action). The accrued cross-claims were property of the estate even if Clarks were unaware of them when they filed for bankruptcy protection.[13] Crum v. Tomlinson (In re Hettick), 413 B.R. 733, 752 (Bankr. D. Mont. 2009). When debtors fail to properly schedule an asset, the asset remains property of the estate until administered or abandoned formally by the trustee, even after the case is closed. In re Lopez, 283 B.R. at 31-32; § 554(d)(property not abandoned or administered remains property of estate). A leading treatise explains abandonment as follows:

> Abandonment presupposes knowledge. There can, as a rule, therefore be no abandonment by mere operation of law of property that was not listed in the debtor's schedules or otherwise disclosed to creditors. This principle is recognized in section 554(c) which provides that, unless the court orders otherwise, property of the estate that is neither abandoned nor administered in the case remains property of the estate. *** If the property is later discovered and is valuable the court may reopen the case[.]

[13] Although counsel for Clarks argued at the motion to reopen hearing that the cross-claims did not accrue until 2003 and therefore belonged to Clarks, the cross-claims are based on Strands' filing of the Notice of Lien, which occurred prepetition in 1999. Clarks concede this fact in their cross-complaint.

-15-

5 COLLIER ON BANKRUPTCY, ¶ 554.03 (Henry Somers & Alan Resnick, eds. 16th ed. 2011)(footnotes omitted). Thus, the chapter 7 trustee is the only proper party in interest with standing to prosecute the cross-claims. See § 323; Rule 6009; and Haley v. Dow Lewis Motors, Inc., 85 Cal. Rptr. 2d 352, 356 (Cal. Ct. App. 1999)(in the case of an omitted cause of action, the trustee is the real party in interest and the debtor lacks standing to prosecute it).

**3. The bankruptcy court applied an incorrect legal standard to the motion to reopen.**

Strands contend the bankruptcy court abused its discretion by going beyond the permissible scope of a motion to reopen and prejudging the merits of the underlying dispute. We agree.

Reopening a case under § 350(b) is typically ministerial and "'presents only a narrow range of issues: whether further administration appears to be warranted; whether a trustee should be appointed; and whether the circumstances of reopening necessitate payment of another filing fee.'" In re Lopez, 283 B.R. at 26 (quoting Menk v. Lapaglia (In re Menk), 241 B.R. 896, 916-17 (9th Cir. BAP 1999)). "Extraneous issues should be excluded." In re Menk, 241 B.R. at 917. While "considerations of economy make it sensible to combine consideration of the motion to reopen with consideration of dispositive issues in the underlying litigation, and although it is tempting to say that the reopening motion entitles the court to perform a gatekeeping function that justifies inquiring in to the related relief that will be sought, such inquiries are in fact inappropriate." Staffer v. Predovich (In re Staffer), 306 F.3d 967, 972 (9th Cir. 2002)(reversing bankruptcy court for denying motion to reopen on the ground that

-16-

underlying suit was barred by laches)(citations omitted).

In short, on a motion to reopen it is procedurally improper for the bankruptcy court to consider the merits of the underlying dispute.  In re Menk, 241 B.R. at 916; In re Dunning Bros. Co., 410 B.R. 877, 887 (Bankr. E.D. Cal. 2009)(conflating the reopening question with the merits of the underlying dispute creates a risk that the adversary process will be inappropriately truncated or preempted entirely).

The bankruptcy court applied an incorrect standard of law when it reviewed the underlying merits of the relief sought by Strands and denied their motion to reopen on the basis of laches, or issue or claim preclusion, or that their claims were time barred.[14]  Accordingly, the bankruptcy court abused its discretion in denying the motion to reopen.  Hinkson, 585 F.3d at 1262.

**4.  The bankruptcy case should be reopened.**

The question of whether Clarks' bankruptcy case should be reopened required only a decision whether there may be unscheduled assets that could be administered by a trustee.  Here, at least two assets were not disclosed that belong to the estate.  If the case is not reopened and the cross-claims belong to the estate, then Strands run the risk of dismissal of any future suit in state court on the ground that Clarks lack standing.  This is what Strands were trying to avoid by bringing the motion.  Why Strands failed to raise this issue in the bankruptcy court at the time of

---

[14] Even if it were proper for the bankruptcy court to review the underlying merits of the dispute, as we noted above, issue or claim preclusion does not prevent Strands from bringing their claims to either the state court or bankruptcy court because their voluntary dismissal without prejudice is not a final judgment on the merits.

-17-

the first reopening in 2006 is unknown. It is also unknown why Strands pursued the Partnership Case in state court when they knew Clarks' standing may be an issue.

Nonetheless, further administration is warranted in this case. When faced with the prima facie existence of undisclosed estate assets, the best solution is to reopen the case and appoint a trustee to deal with the assets. In fact, if the purpose of the reopening is to deal with unscheduled assets as property of the estate, then it is per se an abuse of discretion not to order appointment of a trustee. In re Lopez, 283 B.R. at 32 (Klein, J., concurring).[15]

## VI. CONCLUSION

Based on the foregoing reasons, we REVERSE the bankruptcy court's decision concerning standing and reopening and REMAND with instruction that the bankruptcy court reopen the case, that a trustee be appointed and that further proceedings consistent with

---

[15] In the motion to reopen, Strands sought under § 523(a)(3)(B) to file a claim under § 523(a)(2), (4) or (6). Because Strands did not receive notice of the bankruptcy, their action against Clarks for nondischargeability of a debt under § 523(a)(2), (4) or (6) is not subject to the time limits set forth in Rule 4007(c). See § 523(a)(3)(B) (a discharge under § 727 does not discharge a debtor from a debt under § 523(a)(2), (4) or (6) that was not scheduled in time to permit the timely request for a determination of dischargeability, unless the creditor had notice or actual knowledge of the case in time for timely request).

Motions to reopen are not a prerequisite for commencing an action for nondischargeability of a debt under § 523(a)(3)(B). In re Staffer, 306 F.3d at 972-73. Thus, Strands were free to file their nondischargeability action without permission of the bankruptcy court. However, we note that it could be subject to a laches defense. Id. at 973.

-18-

this memorandum be undertaken.[16]

---

[16] By ordering reopening of the case, we are not implying that Strands' claims have any merit. Clarks (or the appointed trustee) are free to raise any defenses available. <u>In re Staffer</u>, 306 F.3d at 972-73. It could very well be that Strands' claims are time barred, that they are precluded on the ground of laches, or that some other legal defense applies. <u>Id.</u>

-19-