KENNETH SIVER, administrator, *vs.* ATLANTIC UNION COL-
LEGE & another.

Worcester. September 23, 1958. — December 8, 1958.

Present: WILKINS, C.J., WILLIAMS, COUNIHAN, WHITTEMORE, &
CUTTER, JJ.

*Landlord and Tenant,* Existence of relation. *Real Property,* License. *Wanton or Reckless Conduct. Dangerous Instrumentality.*

A student in a college who lived with his wife and child in his trailer on the college grounds pursuant to oral permission given by the college president on condition that he provide his own sewage facilities,

water and lights and who paid no rent to the college but did pay for electricity supplied to the trailer from the college power plant occupied the land on which his trailer stood only as a gratuitous licensee of the college and not as its tenant, and his child was also a gratuitous licensee. [216]

Evidence did not warrant a finding of reckless or wanton conduct on the part of a college or its president in an action against them to recover for the death of a student's child slightly over two years of age, a gratuitous licensee on the college grounds, resulting from a fall into a pit containing pipes, pumps and a condensation tank used as part of the college's heating system and having a large concrete slab on top, at a time when there were two feet of hot water in the pit and a heavy solid iron cover in the concrete slab had been moved aside by some third person. [216–217]

TORT. Writ in the Superior Court dated November 18, 1955.

The action was tried before *Meagher, J.*

*Morris N. Gould,* for the plaintiff.

*Philip J. MacCarthy,* for the defendant Atlantic Union College.

*Paul L. Hinckley,* for the defendant Stump.

WILLIAMS, J. This is an action of tort to recover for the death and conscious suffering of the plaintiff's intestate, Cheryl Siver, a child of two years and two months. The defendants are Atlantic Union College and its president, Lawrence M. Stump. The plaintiff's declaration is in eight counts of which counts 1 and 2 allege the negligence of the president; counts 3 and 4 the negligence of the college; counts 5 and 6 the wilful, reckless or wanton conduct of the college; and counts 7 and 8 the wilful, reckless or wanton conduct of the college in causing "to exist a certain dangerous instrumentality." Specifications filed by the plaintiff state that the negligent and reckless conduct relied upon consists of the maintenance of "an insufficiently protected pit, or open and unguarded pit, into which pit was allowed to be discharged heated water and steam, and in which pit was allowed to be exposed certain pipes and valves insufficiently protected and open and exposed or insufficiently protected so that safe passage over said pit could not be had."

The facts are substantially undisputed. At the conclusion

of the plaintiff's evidence the judge allowed motions by the defendants for directed verdicts on all of the counts, to the allowances of which the plaintiff excepted.

Atlantic Union College is located in Lancaster and was originally incorporated as South Lancaster Academy in 1883 under the provisions of Pub. Sts. c. 115 for the "instruction of persons of both sexes in the sciences and holy scriptures, and also to provide facilities for regular and systematic labor for the students." The academy, whose name was changed in 1922 to Atlantic Union College, was authorized in 1953 to grant certain degrees. In 1954 it conducted a college with 350 students, a high school with 175 students and a grammar school with 125 students, imposing no restrictions on the ground of race, creed or color.

It maintained dormitories for its students, with special houses reserved for those who were married. Students who occupied these dormitories paid rent to the college. The college also maintained a laundry for the students, a dairy farm, a college press and a book bindery. Forty-five of the students' apartments were heated by steam from a central heating plant and received electricity from a central power plant. Resident students were charged for heat and electricity. Some of the dairy products were sold to the public, and the college press accepted some outside commercial work. Steam heat was sold to one outside customer, a commercial firm located near the heating plant. The steam used in the college buildings was returned for condensation to one or more pits located in the college grounds where it was condensed and thence transmitted in liquid form back to the central heating plant.

The defendant Stump was president and manager of the college, his duties being primarily concerned with its finances.

The accident to the plaintiff's intestate, which is the subject of this action, occurred on October 19, 1954, at one of these pits. The plaintiff, who was the father of the injured child, had been a student at the college approximately three years, and for some eighteen months had been living with his wife and two children in his trailer on the college grounds.

Oral permission to install the trailer had been given by the president on condition that the plaintiff provide his own sewage facilities, water and lights. He paid no rent to the college but paid for electricity which was supplied to the trailer from the college power plant. The charge averaged approximately $5 per month. The arrangement for the location of the trailer was made with the president through the plaintiff's brother who was assistant business manager. The particular pit to which reference has been made was located four to six feet from a sidewalk leading from one of the college buildings to a road and was fifteen feet from the road. It was within view of the plaintiff's trailer which was on the other side of this road. This pit was covered with a concrete slab eight feet square in the center of which were two covers consisting of an iron grille and a solid iron cover each approximately two feet wide by four feet long. The solid metal cover was stated in the bill of exceptions to weigh ten pounds and in the testimony of one of the witnesses to weigh twenty-five pounds "more or less." This cover rested on metal supports and could be raised by means of a bolt inserted in one end of the cover. The pit contained steam and water pipes, a sump pump, a condensation tank, and a pump to return the condensed steam to the central plant. The steam condensed in this pit came from the college gymnasium and an apartment building occupied solely by students and others connected with the college.

At 7 A.M. on October 19, a student observed steam coming from the grille of this pit. He lifted the iron cover and saw in the pit hot water which was approximately two feet deep and appeared to be running from an outlet in the condensation tank. He replaced the cover and at about 8 A.M. reported the presence of the water to the power plant engineer. Between 11 A.M. and 12 M. on the same morning, a woman in a neighboring dormitory noticed that the cover was tilted and that two children were looking down into the pit. Fifteen minutes later, the dead body of Cheryl, the plaintiff's intestate, was found in the pit, immersed in hot water. There was evidence that in the previous week there had been

some trouble with the appliances in the pit. The sump pump was not working and a fuse had been replaced.

The permission given by the college to the plaintiff to locate his trailer on college land and his subsequent occupancy of it in accordance with that permission did not create the relation of landlord and tenant between him and the college. A relation of that character is contractual and "arises out of an agreement, express or implied, by which one uses and occupies the premises of another for a consideration — usually the payment of rent." *Williams* v. *Seder*, 306 Mass. 134, 136. *Story* v. *Lyon Realty Corp.* 308 Mass. 66, 69–70. See *Baseball Publishing Co.* v. *Bruton*, 302 Mass. 54. There was here no evidence of any consideration for the granted privilege.

In the opinion of a majority of the court the plaintiff occupied the land on which his trailer stood only as a gratuitous licensee. That he was also a student in the college did not affect the relation of the child to the college, or her right to use its land, which was dependent on and limited by her father's license. Such right was by derivation also that of a licensee.

Licensees must take premises as they find them (*Reardon* v. *Thompson*, 149 Mass. 267, 268, and cases cited; *Creeden* v. *Boston & Maine R.R.* 193 Mass. 280, 284; *Statkunas* v. *L. Promboim & Son Inc.* 274 Mass. 515, 518), and an owner or licensor is under no duty to his licensees other than to refrain from wilful, reckless or wanton conduct likely to cause injury. Conduct of this character is in the nature of an intentional wrong, the tendency of which to injury is known or ought to be known and ordinarily is accompanied by an indifference to and disregard of the probable harmful consequences. *Banks* v. *Braman*, 188 Mass. 367, 369. *McIntyre* v. *Converse*, 238 Mass. 592, 594. *Baines* v. *Collins*, 310 Mass. 523, 526. See *Altman* v. *Aronson*, 231 Mass. 588, 592. The evidence in the present case did not warrant a finding of such conduct on the part of the college, if indeed it was sufficient to support a finding of negligence. See *Norris* v. *Hugh Nawn Contracting Co.* 206 Mass. 58; *Hafey* v.

*Turners Falls Power & Elec. Co.* 240 Mass. 155, distinguishing *Romana* v. *Boston Elev. Ry.* 218 Mass. 76, on which the plaintiff relies; *Karlowski* v. *Kissock,* 275 Mass. 180; *Lanstein* v. *Acme White Lead & Color Works,* 285 Mass. 328; *Partridge* v. *United Elastic Corp.* 288 Mass. 138, 144.

The pit with its pipes, pumps and tank was, so far as appears, a reasonably necessary part of the college heating system. It was overspread with concrete and access to it guarded by two relatively heavy covers. There seems nothing in its description to make it attractive to children. It could not be found, as alleged by the plaintiff, to be a dangerous instrumentality as the term is commonly applied. See *Leahy* v. *Standard Oil Co. of New York,* 224 Mass. 352; *Teasdale* v. *Beacon Oil Co.* 266 Mass. 25; *Guinan* v. *Famous Players-Lasky Corp.* 267 Mass. 501; *Sarna* v. *American Bosch Magneto Corp.* 290 Mass. 340.

The accident to the child was caused not by improper construction or location of the pit but by the removal of the cover by some third person. Although such act obviously was to be foreseen as a possibility, we think it was not one which as the plaintiff contends ought reasonably to have been anticipated as probable. See *Horan* v. *Watertown,* 217 Mass. 185. It was no more likely to occur than would be the removal or destruction of other protective devices in common use such as manhole covers, fences and railings.

In the view we have taken of the college's responsibility for the injuries to the plaintiff's intestate, we need not consider its alleged immunity as a charitable corporation.

The disposition of the counts against the president must follow that of the counts against the college. There is no evidence of his responsibility for the maintenance of the pit except that attributable to him from his official position.

*Exceptions overruled.*