Linda KOWALSKI, a/k/a Linda Larochelle, etc., Plaintiff, Appellee,

v.

Richard J. GAGNE, Defendant, Appellant.

AETNA LIFE AND CASUALTY COMPANY, Plaintiff in Intervention, Appellee,

v.

Richard Joseph GAGNE and Linda Kowalski, A/K/A Linda Larochelle as the Administratrix of the Estate of Robert John Kowalski, Defendants in Intervention, Appellees.

No. 90–1134.

United States Court of Appeals, First Circuit.

Heard Aug. 1, 1990.

Decided Sept. 14, 1990.

Daniel M. Wrenn, with whom Milton, Laurence & Dixon, Worcester, Mass., and William K. Danaher, Jr., Springfield, Mass., were on brief, for defendant, appellant.

Charles E. Dibble, Contoocook, N.H., for plaintiff, appellee Linda Kowalski.

John P. Graceffa, with whom Gallagher & Gallagher, P.C., Boston, Mass., was on brief, for plaintiff in intervention, appellee Aetna Life and Cas. Co.

Before CAMPBELL and SELYA, Circuit Judges, and BOWNES, Senior Circuit Judge.

BOWNES, Senior Circuit Judge.

This appeal arises out of a diversity suit brought by plaintiff Linda Kowalski against defendant Richard Gagne, seeking damages under the Massachusetts wrongful death statute for the fatal shooting of plaintiff's husband by defendant. The dis-

trict court entered judgment on a jury verdict awarding $45,000 to the plaintiff, and defendant now appeals. For the reasons that follow, we affirm.

## I. BACKGROUND

Richard Gagne shot and killed Robert Kowalski at Gagne's Pharmacy in Holyoke, Massachusetts on the night of October 29, 1970. The precise circumstances of the shooting are unknown. Gagne and Kowalski were both pharmacists and knew each other professionally and socially. There was evidence that Kowalski had gone to Gagne's Pharmacy after closing hour to talk to the defendant about obtaining employment. Gagne disputed this account, asserting instead that he had surprised an armed intruder in the darkened store as he was closing for the night and shot the intruder in self-defense, not knowing it was Kowalski.

In February 1973, Gagne was tried and convicted of second degree murder for Kowalski's death. Linda Kowalski, the victim's wife, then initiated a civil suit against Gagne seeking damages under the Massachusetts wrongful death statute, Mass. Gen.L. ch. 229, § 2. This suit was dismissed in 1979 for failure to prosecute. The plaintiff subsequently settled a legal malpractice claim against her attorneys for $120,000.

In May 1987, the plaintiff filed a second wrongful death action against the defendant, this time for the benefit of her two children. In response to plaintiff's motion, the district court granted partial summary judgment for the plaintiff, holding that the defendant's murder conviction collaterally estopped him from contesting his liability under the wrongful death statute. The court also granted summary judgment for the intervening plaintiff, Aetna Life and Casualty Company, which had insured de-

fendant at the time of the killing. The court ruled that the Aetna insurance policy did not cover Gagne's liability for the injuries he had caused the decedent. There was a clause in the policy excluding coverage for intentional acts by the insured. The court held that defendant's murder conviction collaterally estopped him from denying that his shooting of decedent was an intentional act within the meaning of the insurance exclusion.

Following these grants of summary judgment, the question of damages was tried to a jury under the Massachusetts wrongful death statute. Applying the 1970 version of the statute, which provided only for punitive damages and which set a damages ceiling of $50,000, the jury awarded $45,000 to the plaintiff.[1] Defendant now appeals, raising a number of legal and evidentiary challenges. We consider each of these challenges in turn.

## II. MALPRACTICE SETTLEMENT

■ Defendant first argues that the plaintiff's $120,000 legal malpractice settlement should be used as an offset against the wrongful death statute's $50,000 damages ceiling. According to defendant's calculations, $87,600 of the settlement amount is attributable to interest paid as a result of the delay caused by the law firm's negligent failure to prosecute. Defendant contends that the remaining $32,400 of the settlement constitutes a payment of principal and should be offset against the $50,000 statutory damages ceiling, leaving a maximum of $17,600 that the jury was entitled to award the plaintiff in her action against the defendant.

The Massachusetts wrongful death statute in effect at the time of the shooting provided for damages "to be assessed with reference to the degree of his [the defen-

---

1. The 1970 wrongful death statute governed because it was the version in effect at the time of the shooting. It provided, in pertinent part:

 A person who (1) by his negligence causes the death of a person in the exercise of due care, or (2) by wilful, wanton or reckless act causes the death of a person under such circumstances that the deceased could have recov-

ered damages for personal injuries if his death had not resulted ... shall be liable in damages in the sum of not less than five thousand, nor more than fifty thousand dollars, to be assessed with reference to the degree of his culpability....

Mass.Gen.Laws Ann. ch. 229, § 2, at 395 (West 1985) (Historical Note).

dant's] culpability." Mass.Gen.Laws Ann. ch. 229, § 2, at 395 (West 1985) (Historical Note). The statute thus was punitive rather than compensatory in nature. *See, e.g., Oliveria v. Oliveria,* 305 Mass. 297, 25 N.E.2d 766, 768–69 (1940) ("Due weight must be given to the penal nature of our death statute."), *overruled on other grounds, Sorensen v. Sorensen,* 369 Mass. 350, 339 N.E.2d 907 (1975); *O'Connor v. Benson Coal Co.,* 301 Mass. 145, 16 N.E.2d 636, 637 (1938); *Macchiaroli v. Howell,* 294 Mass. 144, 146, 200 N.E. 905 (1936); *Porter v. Sorell,* 280 Mass. 457, 461–62, 182 N.E. 837 (1932). Because of the punitive nature of the statute, the money that the plaintiff was able to obtain in her legal malpractice action is irrelevant to the amount of damages that may properly be assessed against the defendant. *See Arnold v. Jacobs,* 316 Mass. 81, 54 N.E.2d 922, 923 (1944) (The wrongful death statute "does not limit the amount that can be collected from a number of wrongdoers for one death.... [A]s in the criminal law, each wrongdoer may be made to suffer the maximum penalty, no matter how many are guilty."). The defendant was not punished in the slightest by the law firm's payment of $120,000. To allow the malpractice settlement to reduce defendant's damages burden would defeat the punitive purposes of the statute. Accordingly, we reject defendant's offset argument.[2]

### III. COLLATERAL ESTOPPEL

Defendant next challenges the district court's application of collateral estoppel principles as the basis for partial summary judgment for the plaintiff on the question of wrongful death liability and for full summary judgment for intervenor Aetna Casualty and Life Company on the applicability of the "intentional act" exclusion provision in defendant's insurance policy. The district court based both applications of collateral estoppel on defendant's state conviction for second degree murder.

Because our jurisdiction rests on diversity and because the case relied on by the parties invoking estoppel was decided by a Massachusetts court, we apply Massachusetts law on collateral estoppel in reviewing the lower court's actions. *See Lynch v. Merrell–National Laboratories,* 830 F.2d 1190, 1192 (1st Cir.1987). Under Massachusetts law, "a party to a civil action against a former criminal defendant may invoke the doctrine of collateral estoppel to preclude the criminal defendant from relitigating an issue decided in the criminal prosecution." *Aetna Casualty and Surety Co. v. Niziolek,* 395 Mass. 737, 481 N.E.2d 1356, 1360 (1985). To invoke collateral estoppel, Massachusetts requires that the issue have been actually litigated and determined by a valid and final judgment, that the determination be essential to the judgment, and that the estopped party have had a full and fair opportunity to litigate the issue. *See, e.g., Martin v. Ring,* 401 Mass. 59, 514 N.E.2d 663, 664 (1987); *Massachusetts Property Ins. Underwriting Ass'n v. Norrington,* 395 Mass. 751, 481 N.E.2d 1364, 1366 (1985); *Niziolek,* 481 N.E.2d at 1363; *see also Cinelli v. Revere,* 820 F.2d 474, 479 (1st Cir.1987), *cert. denied,* 485 U.S. 1037, 108 S.Ct. 1600, 99 L.Ed.2d 915 (1988). Having set forth these general principles, we examine the two invocations of collateral estoppel challenged by defendant on appeal.

### A. *Wrongful Death Liability*

The plaintiff's complaint alleged two alternative grounds for liability under the Massachusetts wrongful death statute: (1) that the defendant, "by a willful, wanton or reckless act, caused the death of the decedent under such circumstances that the decedent could have recovered damages for personal injuries if his death had not resulted," and (2) that the defendant, "by his negligence, caused the death of the decedent without justification while the de-

---

**2.** We recognize that despite its explicit punitive focus, the wrongful death statute in effect in 1970 served a compensatory function as well. *See, e.g., Bullard v. Central Vermont Ry.,* 565 F.2d 193, 199 (1st Cir.1977); *Mone v. Greyhound Lines, Inc.,* 368 Mass. 354, 331 N.E.2d 916, 917 n. 4 (1975). Notwithstanding this compensatory function, the statute "in the main ... is penal." *Arnold v. Jacobs,* 54 N.E.2d at 923.

cedent was in the exercise of due care and lawfully upon the premises at 67 Cabot Street, Holyoke, Massachusetts." In granting the plaintiff's motion for summary judgment on the question of liability, the district court held that defendant's criminal conviction for second degree murder collaterally estopped him from contesting the willful, wanton or reckless nature of his conduct in shooting the decedent. Consequently, the court ruled that the defendant was estopped from disputing his liability under the first wrongful death ground alleged in plaintiff's complaint. Defendant challenges this ruling on appeal, contending that the issues necessarily decided by the criminal jury in convicting him of second degree murder were not identical, for collateral estoppel purposes, with the issue of whether his conduct was willful, wanton or reckless under the Massachusetts wrongful death statute.

The deficiencies in defendant's argument quickly become apparent when the elements of wrongful death liability are compared with those of second degree murder. In the context of a wrongful death action, "wilful conduct has been described as action intended to do harm, while conduct is wanton or reckless when 'in the face of a known or obvious risk [one] intentionally persist[s] in conduct involving a high degree of probability that substantial harm would result to another.'" *Gage v. Westfield,* 26 Mass.App.Ct. 681, 532 N.E.2d 62, 68 (1988) (quoting *Desmond v. Boston Elevated Ry.,* 319 Mass. 13, 16, 64 N.E.2d 357 (1946)), *review denied,* 404 Mass. 1103, 536 N.E.2d 1093 (1989); *see also Siver v. Atlantic Union College,* 338 Mass. 212, 154 N.E.2d 360, 363 (1958). The trial court instructed the jury in defendant's criminal trial that it could convict defendant of second degree murder if it found that he had

shot and killed Robert Kowalski with malice aforethought. The court defined malice in the following way:

> Now, a killing may be malicious and consequently murder, even though the slayer did not want to cause death. If a man intentionally and without legal justification or excuse or extenuation uses upon the body of another a force, for example a bullet from a revolver that i[f] used will probably do grievous bodily harm to that other person and will create a plain and strong likelihood that the other person would die as a result, the act is malicious within the meaning of the law....

The criminal jury found defendant guilty of second degree murder. Thus, at a minimum, the jury found that defendant had intentionally inflicted force upon Robert Kowalski in a manner that created a plain and strong likelihood of death. Such a finding clearly encompasses the elements of willful, wanton or reckless conduct as defined in the wrongful death context—i.e., conduct involving a high degree of probability that harm would result to another. Given the identity in issues, the district court properly applied the principles of collateral estoppel to preclude defendant, on the basis of his second degree murder conviction, from contesting his liability under the wrongful death statute.[3]

## B. *Insurance Exclusion Provision*

■ Defendant's insurance policy with the Aetna Life and Casualty Company contained an exclusion provision stating, in pertinent part, that insurance coverage for personal liability or medical payments to others did not apply "to bodily injury or property damage ... which is expected or

---

**3.** Defendant, in challenging the propriety of the district court's invoking collateral estoppel, places considerable emphasis on the fact that the criminal jury was instructed it could *infer* malice if it found that defendant had intentionally used a deadly weapon. We do not completely follow the circuitous path of defendant's reasoning in arguing that the criminal jury's ability to infer malice undermines the applicability of collateral estoppel principles. No mandatory presumption of malice existed. Rather, any inference of malice from the intentional use of a deadly weapon was permissive, and the issue was left to the jury for its ultimate determination. *See Commonwealth v. Gagne,* 367 Mass. 519, 326 N.E.2d 907, 910 & n. 1 (1975). Defendant has cited no authority prohibiting the application of collateral estoppel when an issue fully litigated and finally decided in a prior action may have been decided, in part, based on a permissive inference.

intended by the insured." In granting Aetna's motion for summary judgment, the district court ruled that defendant's murder conviction estopped him from contesting the intentional nature of his conduct for purposes of the exclusion provision. Accordingly, the court held as a matter of law that Aetna was entitled to invoke the exclusion provision and refuse to cover defendant for any liability that he incurred as a result of fatally shooting Robert Kowalski. As he did with respect to the issue of wrongful death liability, defendant challenges this ruling on appeal, contending that there is not an identity between the issues that were decided in the criminal trial and the issues that must be decided to invoke the exclusion provision.[4]

In examining defendant's argument, we start with an examination of the insurance exclusion provision. The provision excludes coverage for bodily injury "expected or intended" by the insured. The Massachusetts Supreme Judicial Court has construed the phrase "expected or intended" as barring coverage for *nonaccidental* occurrences caused by the insured. With respect to the definition of "nonaccidental," the court has stated:

> Our cases have concluded that an injury is nonaccidental only where the result was actually, not constructively, intended, i.e., more than recklessness. This standard requires a showing that the insured knew to a substantial certainty that the bodily injury would result.

*Quincy Mut. Fire Ins. Co. v. Abernathy*, 393 Mass. 81, 469 N.E.2d 797, 800 (1984). The insured, however, "need not intend to cause the exact extent of the injury which results, in order for the exclusion to apply." *Newton v. Krasnigor*, 404 Mass. 682, 536 N.E.2d 1078, 1081 (1989). It is enough that the insured be shown to have intended, or to have known with substantial certainty, that *some* injury would result. *See id.* For purposes of applying collateral estoppel to the matter of the

insurance exclusion provision, therefore, the dispositive question is whether the criminal jury necessarily found that the defendant intended, or knew with substantial certainty, that some injury would result from his conduct. We conclude that it did.

To convict defendant of second degree murder under the malice instruction given by the trial court, the criminal jury at a minimum was required to find that the defendant intentionally and without legal excuse or justification used upon the body of Robert Kowalski a force that would probably do grievous bodily harm and that would create a plain and strong likelihood that Robert Kowalski would die as a result. Although this instruction did not require a finding of an actual intent to kill, the instruction's requirement of an *intentional* use of force creating a plain and strong likelihood of death clearly does encompass an intent to cause *some* bodily injury. *Cf. Commonwealth v. Swift*, 382 Mass. 78, 413 N.E.2d 717, 720 (1980) ("Malice aforethought ... encompasses any intent to inflict injury without legal excuse or palliation; actual intent to kill is not necessary."); *Commonwealth v. Fitzgerald*, 380 Mass. 840, 406 N.E.2d 389, 397 (1980) ("An intention to inflict injury on a person without justification or palliation is malicious within the meaning of the law.").

This conclusion becomes patently obvious when one considers that the intentional use of force involved here consisted of defendant's aiming and firing a gun at the decedent. No other type of force has been alleged. Moreover, the defendant has not denied that he intentionally fired a bullet at Robert Kowalski; his "theory" was that he did so in self-defense. Given the nature of the force that admittedly was used, it is clear that the criminal jury's finding of malice encompassed a determination that defendant intended to cause some injury, even if that intent did not extend to an intent to cause death. *Cf. Krasnigor*, 536 N.E.2d at 1081 n. 7 ("[F]rom the very na-

---

**4.** In her brief, plaintiff has stated that she takes no position on the correctness of the district court's collateral estoppel ruling with respect to the insurance exclusion provision. Consequently, we address none of the issues that would be raised if the insurer were attempting to use defendant's conviction to estop the plaintiff, as opposed to the defendant, from contesting the intentional nature of the shooting.

ture of the act, harm to the injured party must have been intended."); *Terrio v. Mc-Donough*, 16 Mass.App. 163, 450 N.E.2d 190, 194 (1983) ("As to McDonough's argument that, even if he intended to push Terrio down the stairs, her plunge through a glass pane at the bottom was an unanticipated accident, it is self-evident that if a person is pushed down a flight of stairs, it is to be expected that person will be hurt."), *review denied*, 390 Mass. 1102, 453 N.E.2d 1231 (1983). Consequently, the district court properly invoked defendant's second degree murder conviction to estop him from contesting the applicability of the exclusion provision in his insurance policy.[5]

### IV. EVIDENTIARY OBJECTIONS

Defendant next raises a trio of evidentiary objections with respect to the trial proceedings. We consider each objection in turn.

#### A. *Admission of Murder Conviction*

In addition to ruling that defendant's murder conviction estopped him from contesting his wrongful death liability, the district court also allowed the murder conviction to be considered by the jury as evidence in determining the amount of wrongful death damages to be awarded. Defendant challenges the consideration of his murder conviction in the damages trial on three grounds. First, he contends that the conviction was improperly admitted into evidence because plaintiff never produced a certified copy of the conviction; instead, the district court took judicial notice of the conviction. Second, defendant argues that his conviction was irrelevant to the ques-

tion of damages and should have been barred from consideration under Fed.R. Evid. 401. Third, even if the conviction was relevant, defendant asserts that its prejudicial effect outweighed its probative value, and thus, the evidence should have been excluded under Fed.R.Evid. 403. We are not persuaded by any of these arguments.

■ Although it is true that the usual method of proving a prior conviction is by introducing a certified copy of conviction, the defendant has cited no authority and we have found none specifying certified copies as the exclusive means of proving the fact of a prior conviction. Indeed, our research has disclosed cases stating precisely the contrary. *See United States v. Karlin*, 852 F.2d 968, 973 (7th Cir.1988) ("[W]e know of no principle making the judgment of conviction the exclusive means by which the fact of conviction may be proved."), *cert. denied*, 489 U.S. 1021, 109 S.Ct. 1142, 103 L.Ed.2d 202 (1989); *United States v. Arriaga–Segura*, 743 F.2d 1434, 1436 (9th Cir.1984) ("We nevertheless refuse to hold that a certified copy of a prior conviction is the only evidence sufficient to prove a prior conviction.").

In this case, the lower court took judicial notice of defendant's conviction under Fed.R.Evid. 201. It is well-accepted that federal courts may take judicial notice of proceedings in other courts if those proceedings have relevance to the matters at hand. *See, e.g., E.I. Du Pont de Nemours & Co. v. Cullen*, 791 F.2d 5, 7 (1st Cir.1986) (taking judicial notice of a complaint filed in a state action); *United States v. Gordon*,

---

5. In its argument on the issue of the exclusion provision, defendant's brief presents a muddled discussion of the malice requirement as it has been articulated by Massachusetts courts. Defendant seems to argue that malice, as defined under Massachusetts law, contains certain objective elements (i.e., elements of a reasonable person standard) that are incompatible with the type of intent on the part of the defendant that is required to invoke the insurance exclusion provision. Consequently, defendant contends, the issues decided by the criminal jury are not identical with the issues implicated by the exclusion provision, and collateral estoppel cannot be applied.

When defendant's argument is boiled down to its essentials, however, we conclude that it does no more than point out that the criminal jury did not have to find an actual intent to kill to convict defendant of second degree murder. This observation does not affect our determination that the jury did necessarily find, under the instructions it was given, that defendant intentionally used the force of a bullet upon the decedent and thus intended to cause *some* injury. An intent to cause some injury is all that is required to invoke the exclusion provision, which refers to an *injury* "expected or intended by the insured." Shooting another fulfills these conditions.

634 F.2d 639, 642 (1st Cir.1980) (noting that a district court could take judicial notice of a federal indictment returned by a grand jury in another district); 5 J. Weinstein & M. Berger, *Weinstein's Evidence* ¶ 902(4)[01], at 902–28 to 902–29 (1989) ("In many instances where full compliance with certification procedure is not shown, judicial notice may be taken, particularly of court documents."). Courts have applied this principle to take judicial notice of criminal convictions, which is exactly the procedure challenged here. *See Commodity Futures Trading Comm'n v. Co Petro Marketing Group, Inc.*, 680 F.2d 573, 584 (9th Cir.1982); *Government of Virgin Islands v. Testamark*, 528 F.2d 742, 743 (3d Cir.1976); *People v. Davis*, 65 Ill.2d 157, 2 Ill.Dec. 572, 576, 357 N.E.2d 792, 796 (1976). Defendant has articulated no reason why the court below was not equally justified in taking judicial notice under Fed. R.Evid. 201 of defendant's prior conviction, particularly given the district judge's familiarity with the defendant's criminal case.[6] Although it may have been preferable for the plaintiff to have presented a certified copy of conviction, we find no reversible error in the method by which the conviction was introduced into evidence at trial.

■ We also reject defendant's argument that the conviction was not relevant to the issue of damages. The Massachusetts wrongful death statute instructs that damages should be "assessed with reference to the degree of his [defendant's] culpability." We can think of few things more relevant to the question of culpability than a defendant's conviction of second degree murder for the conduct that caused the wrongful death. *Cf. Commodity Futures Trading Comm'n*, 680 F.2d at 584 (concluding that defendant's prior criminal conviction was relevant in a later civil proceeding to rebut defendant's protestations of an innocent mistake); *Rosenblatt v. Percy*, 313 Mass. 757, 49 N.E.2d 114, 114 (1943) (stating that defendant's violation of a state statute providing for the careful operation of cars vis-a-vis pedestrians "would be evidence of negligence and would bear upon the degree of the defendant's culpability under the death statute").

Finally, we reject defendant's contention that the prejudicial impact created when the jury learned of his murder conviction outweighed any probative value. A district court has broad discretionary power in weighing an evidentiary item's probative weight against its prejudicial effect. *See United States v. Ferrer–Cruz*, 899 F.2d 135, 138 (1st Cir.1990). We review the court's admission or exclusion of evidence on the grounds of prejudice only for abuse of discretion. *See Nickerson v. G.D. Searle & Co.*, 900 F.2d 412, 419 (1st Cir. 1990); *McInnis v. A.M.F., Inc.*, 765 F.2d 240, 246 (1st Cir.1985). We find no abuse of discretion here. The district court properly could have concluded that any prejudice caused by the evidence of defendant's murder conviction was more than outweighed by the relevancy of the evidence to the question of defendant's blameworthiness for the killing. *Cf. Kerr v. First Commodity Corp. of Boston*, 735 F.2d 281, 286 (8th Cir.1984) (upholding the admission of a prior consent decree as probative of defendant's knowledge for purposes of determining punitive damages in a civil action for fraud); *United States v. Francesco*, 725 F.2d 817, 822 (1st Cir.1984) ("While evidence of a prior conviction for a similar offense is always prejudicial, the prejudice is frequently outweighed by the relevancy of the evidence when a defendant's knowledge or intent is a contested issue in the case.").

B. *Plaintiff's Testimony Concerning Conversation With Husband*

The plaintiff testified as part of her case in chief at trial. During one portion of her testimony, she related the contents of a conversation that she had with her husband

---

**6.** The defendant had filed two habeas corpus appeals from his state court conviction with the district court judge prior to the initiation of the wrongful death action. *See Gagne v. Meacham,* 460 F.Supp. 1213 (D.Mass.1978) (Freedman, J.), *aff'd,* 602 F.2d 471 (1st Cir.), *cert. denied,* 444 U.S. 992, 100 S.Ct. 524, 62 L.Ed.2d 422 (1979); *Gagne v. Meacham,* 423 F.Supp. 1177 (D.Mass. 1976) (Freedman, J.).

on the night before his death. Specifically, plaintiff testified that her husband had told her that he had an appointment with the defendant the following night to discuss the prospect of employment at Gagne's Pharmacy. This testimony served to rebut defendant's story that the decedent had been an unlawful intruder in the pharmacy when he was shot. Defendant objects on appeal to the admission of this testimony, contending that testimony by a husband or wife as to private conversations with a spouse is absolutely disqualified under Massachusetts law.

 Defendant is correct in arguing that Massachusetts law bars testimony by a husband or wife as to private conversations with a spouse.[7] *See* Mass.Gen.Laws Ann. ch. 233, § 20 (West 1986); *see also Gallagher v. Goldstein*, 402 Mass. 457, 524 N.E.2d 53, 54 (1988); *Kaye v. Newhall*, 356 Mass. 300, 249 N.E.2d 583, 585 (1969). Because this is an evidentiary rule relating to the competency of witnesses, *see Gallagher*, 524 N.E.2d at 54, the rule governs in this wrongful death diversity action. *See* Fed.R.Evid. 601 ("[I]n civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the competency of a witness shall be determined in accordance with State law."). Defendant, however, failed to object on the basis of the Massachusetts statute below. Our review of the record indicates that defendant first challenged the wife's testimony as inadmissible hearsay. He then stated that the testimony pertained to a private conversation between husband and wife. Neither of these objections made reference to the Massachusetts statute that expressly disqualifies testimony pertaining to private spousal conversations.

It is axiomatic that objections at trial must state specifically the grounds for the objection. *See* Fed.R.Evid. 103(a)(1); *see also United States v. Abou–Saada*, 785 F.2d 1, 8–9 (1st Cir.), *cert. denied*, 477 U.S. 908, 106 S.Ct. 3283, 91 L.Ed.2d 572 (1986); *Bryant v. Consolidated Rail Corp.*, 672 F.2d 217, 220 (1st Cir.1982). We have stated that "[t]he reason for such a requirement is to alert the trial court and the other party to the grounds of the objection so that it may be addressed or cured." *United States v. Walters*, 904 F.2d 765, 769 (1st Cir.1990).[8] Defendant failed to make the requisite specific objection by not citing to the relevant Massachusetts statute.

While it is true that defendant's second attempt to exclude the testimony contended generally that private conversations between spouses were inadmissible, the failure to object specifically on the basis of the statute rendered the objection almost pointless. Federal trial judges cannot be expected to be familiar from the bench with antiquated remnants of state common-law testimonial bars. Consequently, we review the admission of the wife's testimony only for plain error. *See, e.g., Doty v. Sewell*, 908 F.2d 1053, 1057 (1st Cir.1990) (review is only for plain error when no adequate objection was made at trial); *Morrow v. Greyhound Lines, Inc.*, 541 F.2d 713, 724 (8th Cir.1976).

 Plain error exists where the admission of evidence or testimony "was so prejudicial as to seriously affect the fairness or integrity of the proceedings." *Pinkham v. Maine Central R.R. Co.*, 874 F.2d 875, 880 (1st Cir.1989). The exception is to be used only "sparingly and in exceptional cases in order to prevent a clear miscarriage of justice." *Id.* We find no plain error here. Plaintiff's testimony relating her conversation with her husband constituted only a small part of the evidence establishing defendant's culpability for the death of Robert Kowalski. Other evidence existed to

---

7. There are a few specified exceptions to this rule, involving child support actions and the like. These exceptions are not relevant to the matter at issue here.

8. A failure to object may also mean that the reviewing court cannot determine whether there actually was an error, due to the inadequate development of the record. *See* 1 J. Weinstein & M. Berger, *Weinstein's Evidence* ¶ 103[07], at 103–89 to 103–90 (1989). In this case, defendant's failure to object on the basis of the Massachusetts statute means that no factual record was developed as to whether plaintiff's conversation with her husband truly was private for purposes of the statute's application.

**308**

rebut defendant's story that Kowalski had been an intruder on the premises. For instance, there was testimony that Kowalski and Gagne had known each other professionally and socially. Moreover, the jury had before it the fact of defendant's murder conviction to support its finding of defendant's culpability. In light of the substantial evidence supporting the jury's verdict, we conclude that no plain error or miscarriage of justice resulted from the erroneous admission of the testimony regarding the spousal conversation. *See Pinkham*, 874 F.2d at 879–80; *Finch v. Monumental Life Ins. Co.*, 820 F.2d 1426, 1432–33 (6th Cir.1987).

### C. *Admission of Police Testimony*

█ In a hearing held at the close of the first day of trial, the district court ruled in response to a defense motion that the defendant was an unavailable witness due to his poor mental and physical health. Consequently, the court allowed the defense to introduce into evidence under Fed. R.Evid. 804(b)(1) excerpts from testimony that defendant had given at his criminal trial. These excerpts presented to the jury the heart of defendant's self-defense theory.

To rebut this evidence, plaintiff sought and received approval from the district court to read to the jury excerpts from certain testimony that had been given by various police officers at defendant's criminal trial. Defendant objected to the admission of this evidence, contending that no showing of these witnesses' unavailability had been made. Although the district court had initially overruled defendant's objection, in the course of considering defendant's later motion for judgment notwithstanding the verdict, the court held the admission of the police testimony to have been error. But it declared the error harmless and denied the j.n.o.v. motion. Defendant now renews his objection to the police testimony on appeal.

Assuming, without deciding, that admission of the police testimony was error, our standard for determining whether the improper admission constituted harmless er-

ror is "whether we can say 'with fair assurance ... that the judgment was not substantially swayed by the error.'" *Lataille v. Ponte*, 754 F.2d 33, 37 (1st Cir.1985) (quoting *United States v. Pisari*, 636 F.2d 855, 859 (1st Cir.1981)). "The centrality of the evidence, its prejudicial effect, whether it is cumulative, the use of the evidence by counsel, and the closeness of the case are all factors which bear on this determination." *Id.; see also* 1 J. Weinstein & M. Berger, *Weinstein's Evidence* ¶ 103[06], at 103–70 to 103–78 (1989) (listing factors taken into account by courts in determining whether improper admission of evidence was harmless error). Moreover, the determination "must be made in the context of the case as gleaned from the record as a whole." *DeVasto v. Faherty*, 658 F.2d 859, 863 (1st Cir.1981).

Applying these principles to the facts of this case, we agree with the district court's conclusion that any error in the admission of excerpts of the police testimony from the criminal trial was harmless. To a large extent, the inconsistencies in defendant's self-defense theory that plaintiff's counsel attempted to illustrate by reading from the police testimony constituted subtle nuances that were difficult to follow, particularly since the testimonial excerpts were presented out of context and in a disjointed fashion to a jury that knew only a small fraction of the evidence that had been introduced at the criminal trial. At most, plaintiff's reading of the police excerpts contributed to casting some doubt on a portion of the defendant's criminal testimony that claimed the "intruder" that defendant had surprised had turned toward him with a gun in hand, causing the defendant to fire his own gun in self-defense. Certain passages of the police testimony read by plaintiff's counsel indicated that although a gun was found by decedent's side after the shooting, the gun contained no fingerprints and was not primed to be fired. This undermined the credibility of defendant's testimony that the "intruder" had turned toward him with a gun in hand.

If the case had been close, perhaps the reading of these excerpts would have had sufficient impact on the determination of

defendant's credibility as to preclude our finding harmless error. The case was not close, however. Other ample evidence existed to cast doubt on the credibility of defendant's self-defense theory and to support the jury's finding of culpability. For instance, there was testimony that Robert Kowalski had carried a gun for protection. This evidence furnished an innocent explanation for the fact that a gun was found at decedent's side, thus paralleling, in effect, the police testimony concerning the absence of fingerprints on the gun. Second, plaintiff testified that her husband knew defendant both professionally and socially, thereby providing an explanation for decedent's presence in the store that undermined defendant's story about an armed intruder. Third, there was evidence that the decedent had been shot in the back, which conflicted with defendant's testimony that he had fired his gun after the "intruder" had *turned* toward him with gun in hand. Finally, of course, the jury had before it for consideration the fact that defendant had been convicted of second degree murder for his conduct in shooting Robert Kowalski. In light of all of this evidence, we conclude that any marginal impact the admission of the police testimony may have had was not enough to substantially sway the jury in its determination of defendant's culpability. Consequently, we find the admission of the police excerpts, at most, to have been harmless error.[9]

### V. DOUBLE COSTS AND ATTORNEY'S FEES

We end by commenting briefly on plaintiff-appellee's request in her brief that we award double costs and attorney's fees against defendant. Costs and attorney's fees may be awarded under Fed.R.App.P. 38 and 39 as sanctions for bringing frivolous appeals. We have imposed such sanctions where the overwhelming weight of precedent was against appellant's position, where appellant could set forth no

facts to support its position, or where, in short, there simply was no legitimate basis for pursuing an appeal. *See, e.g., E.H. Ashley & Co. v. Wells Fargo Alarm Services,* 907 F.2d 1274, 1279–80 (1st Cir.1990); *Applewood Landscape & Nursery Co. v. Hollingsworth,* 884 F.2d 1502, 1508–09 (1st Cir.1989). Some of defendant's contentions, such as his collateral estoppel arguments, might be in that category. Other of his contentions, however, are valid points of dispute on trial rulings. We do not find that this was a frivolous appeal and decline appellee's request to award double costs and attorney's fees.

*Affirmed.*

---

9. Because of our conclusion that any error was harmless, we need not consider plaintiff's arguments on appeal that: (1) the police testimony was admissible under Fed.R.Evid. 804(b)(1) be-

cause the witnesses were constructively unavailable; or (2) the testimony was admissible under the catch-all exception of Fed.R.Evid. 803(24).