Lowy, J.
This case arises out of a subrogation claim brought by Traveler’s Property and Casualty Company (“Travelers”), as subrogee of Endicott College {“Endicott”).[1] Travelers paid a claim of its insured, Endicott, for damage to an Endicott dormitory allegedly caused by defendant Jonathan Mahoney. Defendant now moves for summary judgment pursuant to Mass.R.Civ.P. 56. For the following reasons, defendant’s motion for summary judgment is ALLOWED.
DISCUSSION
I. Standard of Review
Summary judgment is appropriate when there are no genuine issues of material fact and the summary judgment record entitles the moving party to judgment as a matter of law. Mass.R.Civ.P. 56(c); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 713-14 (1991); Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983). A party moving for summary judgment has the burden of demonstrating that there is no genuine issue as to any material fact and that he is entitled to judgment as a matter of law. Community Nat’l Bank v. Dawes, 369 Mass. 550, 554 (1976). In deciding a motion for summary judgment, the court views the facts in the light most favorable to the nonmoving party. G.S. Enterprises, Inc. v. Falmouth Marine, Inc., 410 Mass. 262, 263 (1991).
II. The “Implied Co-Insureds” Rule
a. The Relevance of the “Implied Co-Insureds” Rule to the College Student-resident Relationship
Plaintiff[2] contends that defendant negligently caused a fire which resulted in damage to defendant’s college dormitory room. Defendant denies responsibility and argues that, even if he were at fault, he is nonetheless not liable under the “implied co-insureds” rule. This rule states that “an insurer cannot recover by means of subrogation against its own insured.” Peterson v. Silva, 428 Mass. 751, 752 (1999). The issue before the Court is whether the “implied co-insureds” rule applies to the college student-resident relationship. If this rule applies, a college’s insurer cannot recover in a subrogation action against a student resident because the student resident is insured along with the college. This Court concludes defendant and Endicott are co-insureds.
Plaintiff argues that the “implied co-insureds” rule does not apply because no landlord-tenant relationship existed between Endicott and defendant. Plaintiff further asserts that even if such a landlord-tenant relationship did exist, the “implied co-insureds” rule still would not apply to the specific facts of this case.
It is unnecessary to resolve this issue of whether a college student-resident relationship constitutes a landlord-tenant relationship.[3] On the facts presented by this litigation, the reasoning behind the co-insureds rule’s application to the landlord-tenant context applies with equal force to this college student-resident relationship.
The landlord-tenant relationship differs in many important respects from the college student-resident relationship. With respect to the issue of fire liability, however, there are many similarities between the expectations, statutoiy rights, and obligations of a resident of a college dormitory and a residential tenant. Plaintiff argues that the purpose of the college’s residential program is to facilitate educational and developmental goals. This is undoubtedly true. The need and purpose for housing, however, is not diminished because a student is participating in residential programs designed to enhance his development. The residential program serves the dual purposes of furthering the College’s educational and developmental goals, as well as providing shelter in return for a portion of tuition.
Endicott’s mandate that students live on campus suggests that Endicott and defendant are co-insureds."[4] This mandate precludes other housing options.- Students living in a dormitory or other student housing rely on the college for many of the same things for which tenants rely upon landlords. Therefore, certain legal consequences of a landlord-tenant relationship apply to the college student-resident relationship.
b. The Application of the “Implied Co-Insureds” Rule to the Instant Case
The Supreme Judicial Court (“SJC”) has discussed the “implied co-insureds” rule in three landlord-tenant contexts. In Lexington Ins. Co. v. All Regions Chem. Labs, Inc., 419 Mass. 712, 714 (1995), the SJC discussed the importance of a “yield-up” clause in a residential lease. Such a clause requires the tenant to return the premises to the landlord in the same condition as it existed at the commencement of the lease unless it is damaged by fire. Id. A yield-up clause shields the tenant from liability caused by her own negligence. Id. In Lumber Mut. Ins. Co. v. Zoltek Corp., 419 Mass. 704, 706-7 (1995), the SJC held thatalease provision that explicitly required the tenant to contribute to premiums on the Are insurance policy, exempted the tenant from liability because he is co-insured with his landlord.
*656 In Peterson v. Silva, the SJC determined that the tenant was a co-insured with his landlord even though the tenant’s lease lacked a yield-up clause or language requiring fire insurance premium contribution. Peterson, 428 Mass. at 751. The court stated that “absent an express provision in a lease establishing a tenant’s liability for loss from a negligently started fire, the landlord’s insurance is deemed held for the mutual benefit of both parties.” Id. at 753. Though the Court does not reach the issue of whether a landlord-tenant relationship existed between Endicott and defendant, the rationale behind the “implied co-insureds” rule and the reasoning of Peterson supports the application of the rule to the case at bar.
III. Peterson's Application to the Instant Case
In Peterson, the SJC noted that a reasonably prudent tenant would expect a premises to have fire' insurance protection, and that if there was fire insurance on the premises, that the landlord’s insurance would also cover him. Id. at 754. A tenant’s reasonable expectation is that a portion of his rent includes a contribution towards the landlord’s cost for fire insurance. Id. Endicott has admitted that it has not excluded defendant’s tuition money from its fire insurance premium payments. Defendant’s contribution to plaintiffs insurance premium payments entitles him to be covered by this policy.
In Peterson, the SJC addressed the effect of the inclusion of a “general loss and damage clause” in a lease. They held that a “general loss and damage clause” was insufficient to meet the requirement that the lease must explicitly establish defendant’s liability for negligently caused fires to avoid application of the “implied co-insureds” rule. Id. at 753. The lease in Peterson, between the landlord and tenant specifically stated:
The lessee agrees to indemnify and save the Lessor harmless from all liability, loss or damage arising from any nuisance made or suffered on the leased premises by the lessee, his family, friends, relatives, invitees, visitors, agents, .or servants from any carelessness, neglect or improper conduct of any such persons.[5]
The Superior Court rejected plaintiffs’ argument that this provision established tenant’s liability for negligently caused fires. Id. Absent an express provision assigning liability for fire damage, a general clause is insufficient to establish liability on tenants. Id. at 753-54.
Plaintiff argues that the Residency and Board Agreement[6] (“the Agreement”) explicitly imposes monetary liability for damage and is enforceable against defendant for fire damage. A close reading of the Agreement, however, reveals that the clause lacks the explicitness required to dispel any expectation of non-liability. The Agreement provides the student resident will be “directly and financially responsible for keeping the room and its furnishings clean and free from damage” and that he or she “agrees to pay charges when assessed for room damages ...” Residency and Board Agreement, 24. As the Agreement does not contain language specifically establishing fire damage liability, the Agreement does not by itself, impose fire damage liability on defendant.
The SJC in Peterson observed that because the landlord did not insist that defendants maintain fire insurance, but did encourage them to buy personal property insurance, ”[t]he clauses dealing with insurance imply that the tenants are liable only for losses to their personal property, and that the [landlord] is responsible for all other property damage.” Peterson, 428 Mass. at 753-54. In the case at bar, plaintiff did not require or even recommend that defendant obtain fire insurance coverage. Plaintiff did, however, recommend to its students that they obtain insurance coverage for their personal property. The absence of a requirement to obtain fire insurance accompanied by an explicit recommendation regarding personal property insurance, coupled with the overly general liability clauses, create a reasonable expectation on the part of students of non-liability for fire damage.
IV. Equitable Principles
Equitable principles provide that subrogation should not be available to the insurance carrier because the tenant is a co-insured of the landlord, absent an express agreement by the landlord and tenant to the contrary. Tate v. Trialco Scrap, 745 F.Sup. 458, 473 (M.D.Tenn. 1989). It is “derived from a recognition of a relational reality, namely that both landlord and tenant have an insurable interest in the rented premisesthe former owns the fee and the latter has a possessory interest.” Sutton v. Johndahl, 532 P.2d 478, 482 (Okla.Ct.App. 1975) (citations omitted). Plaintiff admits it did not exclude defendant’s tuition from plaintiffs fire insurance premium payments. Similar to a landlord, the college too has an insurable interest in the dormitory. By virtue of his tuition payments and the Agreement, defendant, as a resident, has a possessory interest to reside in his dormitory for the duration of the academic year. See Tate, 745 F.Sup. at 473.
Whether or not defendant actually contributed to the premiums, however, is not as important as his reasonable expectations. Cascade Trailer Court v. Beeson, 749 P.2d 761, 766 (Wash.Ct.App. 1988). Because tenants are in privity of contract with their landlord, they may reasonably expect that if there is fire insurance coverage of the unit, they are a co-insured with their landlord. Id. Defendant, like a tenant, had a reasonable expectation that plaintiffs insurance policy would inure to his benefit as a result of his contractual relationship with plaintiff.
Plaintiff may not shift the risk to its students who enjoy a reasonable expectation of fire insurance coverage. See Fashion Place Inv. v. Salt Lake County, 776 P.2d 941, 945 (Utah App. 1989). In Sutton, the court observed that a tenant’s reasonable expectation is bolstered because tenants do not normally take out fire insurance policies on their leased premises. If *657 tenants were expected to carry their own fire insurance policies, “insurance salesmen would have long ago made such need a matter of common knowledge by promoting the sale to tenants of a second fire insurance policy to cover the real estate.” Sutton, 532 P.2d at 482. The same argument could be made in the college student-resident relationship.[7]
The lack of a requirement by Endicott, that defendant obtain his own fire insurance, when read in conjunction with Endicott’s explicit recommendation that defendant obtain personal property insurance, as well as Endicott not excluding defendant’s tuition from its insurance policy premiums, creates a reasonable expectation on the part of defendant that he is a co-insured with Endicott. Further, the Agreement’s language imposing liability, lacks the explicitness necessary to remove an expectation of non-liability. Therefore, defendant’s agreement with the plaintiff did not establish fire damage liability and defendant was entitled to a reasonable expectation that he was insured along with the plaintiff. The “implied co-insureds” rule of fire damage liability should be applied to the defendant.
ORDER
For the foregoing reasons, defendant’s motion for summary judgment is ALLOWED.

 While this action is brought by Travelers as subrogee of Endicott, Endicott remains the named plaintiff pursuant to Mass.R.Civ.P. 17(a), allowing that “[a]n insurer who has paid all or part of a loss may sue in the name of the assured to whose rights it is subrogated.”

 Although Endicott is the named party, the Court will refer to Travelers’ position as plaintiffs position. To the extent distinction for clarity is necessary, the Court will specifically reference either Endicott or Travelers respectively.

 Rent payments are not always required as consideration to create a tenancy. In Silver v. Atlantic College 338 Mass. 212, 215-16 (1958), the court held that a student who lived in his own trailer on the college campus was not a tenant because he did not pay rent, but rather paid for electricity and lived rent free. Though the other students who occupied the dormitories were not characterized as “tenants,” they were characterized as paying “rent.” Id. at 214. The court observed that the landlord-tenant relationship is contractual in nature and “arises out of an agreement, express or implied, by which one uses and occupies the premises of another for considerationusually the payment of rent. Id. at 216. In Story v. Lyons Realty Corp, 308 Mass. 66 at 69-70 (1941), the court noted that while consideration is usually in the form of rent, "any consideration to support a contract is all that is required to constitute an agreement from which a tenancy may result." In Baseball Publishing Co. v. Burton 302 Mass. 54, 55 (1938), the court distinguished a lease from a license. They concluded that a lease requires a writing and a transfer of interest in land while a license “merely excuses acts done by one on land in possession of another that without a license would be trespasses and conveys no interest.” Id. While this Court does not reach the issue of whether the college student-resident relationship constitutes a landlord-tenant relationship, existing case law leaves open the possibility that at least a portion of tuition constitutes consideration for the occupancy of a dorm room.

 While there are exceptions to the rule that students live on campus, none of the exceptions apply to defendant.

 This lease provision was not referenced in the SJC opinion. It was cited, however in the Superior Court decision, Peterson v. Silva, Civil No. 95-1265, 6 Mass. L. Rptr. 363 (Super. Ct. Jan. 31, 1997).

 The Residency and Board Agreement states “All students who are admitted as residents . . . are required to submit a Residency and Board Agreement which implies agreement to the Terms and Conditions of College Housing and Dining Services.” Residency and Board Agreement, 22.

 There may be a concern that applying the “implied co-insureds” rule to college-student residents will encourage negligent and irresponsible behavior in the dormitories. Such a prediction is beyond the realm of this decision. College administrators, however, have a multiplicity of means of effectively deterring negligent behavior in college dormitories. Applying the “implied co-insureds” rule to college campuses will not limit other existing or potential sanctions.